IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE NUTRASWEET COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| AJINOMOTO CO., INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, The NutraSweet Company ("NutraSweet"), by its undersigned attorneys, complains against defendant, Ajinomoto Co., Inc. ("Ajico"), as follows, upon knowledge as to its own status and acts, and upon information and belief as to all other matters:

**INTRODUCTION**

1. This is an action by NutraSweet, a Delaware corporation, for a declaratory judgment that certain actions taken by it, as set forth below, do not constitute a breach of contract.

2. NutraSweet and Ajico are both producers of the artificial sweetener, Aspartame.

3. NutraSweet and Ajico are parties to a May 25, 2000 Release and License Agreement (the "License Agreement"), as supplemented and amended by a May 1, 2002 Letter Agreement (the "Letter Agreement"). The redacted License Agreement is attached as Exhibit 1 and the redacted Letter Agreement is attached as Exhibit 2. Pursuant to the License Agreement, Ajico granted to NutraSweet a "perpetual, irrevocable, royalty-free non-exclusive license and

right" to use certain of Ajico's "Patents and Know-How." License Agreement, § 2.1. The License Agreement allows NutraSweet to, *inter alia*, "use, make, offer to sell and sell Aspartame" worldwide, except within certain countries principally located in Europe (the "Excluded Territory"). *Id.*, §§ 1(5) & (9), 2.1. NutraSweet's use of the licenses granted under the License Agreement does not permit NutraSweet to export Aspartame manufactured "under the Patents and Know-How" to the Excluded Territory. *Id.*, § 2.3.

4. Under the Letter Agreement, NutraSweet agreed that it would not "(a) itself export, or (b) knowingly indirectly export, participate in the export, or cause or induce others to export" licensed Aspartame, i.e. Aspartame manufactured "under the Patents and Know-How," to the Excluded Territory. Letter Agreement, ¶ 3.

5. NutraSweet has acquired manufacturing facilities and intellectual property (the "Daesang Assets") previously-owned by Daesang Corporation and located in Gunsan, Korea. The Daesang Assets include a process for manufacturing Aspartame (the "Daesang Process"). The manufacture of Aspartame in Korea in accordance with the Daesang Process does not use the "Patents and Know-How." *See* License Agreement, § 1(6). Prior to NutraSweet's acquisition of the Daesang Assets, Daesang had been producing Aspartame in accordance with the Daesang Process and exporting it to jurisdictions within the Excluded Territory, including Europe.

6. NutraSweet has recently received and accepted a purchase order from a customer (the "European Customer") requesting Aspartame for delivery in the Excluded Territory. NutraSweet will fill this purchase order with Aspartame manufactured in Korea in accordance with the Daesang Process.

7. Ajico and its affiliates have historically engaged in disputes with Daesang in connection with Ajico's intellectual property rights and the sale of Aspartame into the Excluded Territory, including Europe.

8. There is an actual controversy between NutraSweet and Ajico regarding NutraSweet's right under the License Agreement to sell Aspartame manufactured in Korea in accordance with the Daesang Process into the Excluded Territory.

## PARTIES

9. NutraSweet is a Delaware corporation with its principal place of business and headquarters located in Chicago, Illinois.

10. Upon information and belief, Ajico is a Japanese corporation, having its principal place of business at 15-1, Kyobashi, It-Chome, Chuo-ku, Tokyo 104-8315 Japan. Ajico is one of Japan's largest manufacturers of food products, including seasonings and flavorings, edible oils, processed foods and beverages, dairy products, amino acid technologies, artificial sweeteners, and specialty chemicals.

## JURISDICTION AND VENUE

11. This is an action for declaratory judgment presenting an actual controversy within this Court's jurisdiction under 28 U.S.C. §§ 2201 and 2202. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 and supplemental jurisdiction under 28 U.S.C. § 1367. The amount in controversy, exclusive of interest and costs, exceeds $ 75,000.

12. Both NutraSweet and Ajico have submitted to the jurisdiction of this court for the resolution of any lawsuit arising out of the License Agreement. License Agreement, § 9.6(b).

13. Venue is proper in this district under 28 U.S.C. § 1391(a) & (c) because Ajico has subjected itself to personal jurisdiction in this district. Venue is also properly laid in this district

pursuant to the express agreement of NutraSweet and Ajico as set forth in the License Agreement, § 9.6(b).

## FACTUAL BACKGROUND

14. Aspartame, the artificial sweetener in NutraSweet brand sweetener, was discovered in 1965 by scientists at G. D. Searle and Company. NutraSweet brand sweetener containing Aspartame was introduced in 1981 and revolutionized the sweetener industry. In 1985, Monsanto acquired G. D. Searle. Prior to 2000, Monsanto operated its Aspartame manufacturing business as a division of Monsanto and its foreign subsidiaries.

15. In 2000, Monsanto divested itself of its Aspartame manufacturing business through a sale of the business to a private party. As part of that sale, Monsanto, Ajico, and a Delaware corporation now known as NutraSweet Property Holdings, Inc. entered into the License Agreement on May 25, 2000. The references to "The NutraSweet Company" and "NSC" in the License Agreement refer to NutraSweet Property Holdings, Inc, which is now a subsidiary of NutraSweet.

16. As part of the sale, Monsanto assigned all of its rights under the License Agreement to NutraSweet and NutraSweet assumed all of Monsanto's obligations thereunder.

### A.   The License Agreement

17. The License Agreement grants NutraSweet licenses to manufacture Aspartame using certain of Ajico's "Patents and Know-How" in jurisdictions within the Territory (defined below) where Ajico has rights under its "Patents and Know-How." The licenses granted by Ajico, set forth in Section 2.1 of the License Agreement, state as follows:

> **Grant.** Buyer hereby grants to each of Monsanto and NSC a perpetual, irrevocable, royalty-free, non-exclusive license and right under the Patents and Know-How: (i) to use, make, offer to sell and sell Aspartame in the Territory (including in or from any facility located within the Territory); and (ii) to use and make L-Phenylalanine in the Territory (including in or from any facility located

4

within the Territory) for the manufacture of Aspartame in the Territory (including in or from any facility located within the Territory). In the event that Buyer (including any employee of Buyer with responsibility for any intellectual property matters or Buyer's relationship with Monsanto) becomes aware of any patents or patent applications not listed on Exhibit A or Exhibit A-2 that should be so listed in order to effectuate the intent of the parties under Article 1(6) and Section 2.1 of this Agreement, then Exhibit A and/or Exhibit A-2 shall be revised to include such patents or patent applications, except for the Excluded Patents.

*Id.*, § 2.1. The term "Territory" is defined as "worldwide, except for the Excluded Territory."

*Id.*, § 1(9).

18. The "Patents and Know How" include certain United States and Canadian patents, along with their foreign counterparts, as defined in Section 1, subparagraph (6) of the License Agreement as follows:

> "Patents and Know-How" shall mean: (i) all patents, patent applications and know-how licensed by Buyer or its Affiliates to Monsanto, NSC or their Affiliates as of the Effective Date (whether or not pursuant to the Prior Agreements) which are listed on Exhibit A (as updated immediately prior to the Effective Date); (ii) those of such patents and patent applications as are listed on Exhibit A-2 (as updated immediately prior to the Effective Date) and know-how that are owned by Buyer or its Affiliates as of the Effective Date with regard to the manufacture of Aspartame and L-Phenylalanine which are utilized, or have been asserted by Buyer or its Affiliates to be utilized, by Monsanto, NSC or their Affiliates at Monsanto's Augusta, Georgia facility prior to, or as of, the Effective Date; and (iii) all Counterparts to such patents and patent applications. It is confirmed that none of the Excluded Patents are or shall be included in the Patents and Know-How.

*Id.*, § 1(6).

19. The License Agreement also prevents NutraSweet from using the licenses granted by Ajico to manufacture Aspartame for export to the "Excluded Territory." *Id.*, § 2.3. Accordingly, Section 2.3 of the License Agreement provides as follows:

> **No Export to Excluded Territory.** The right and license set forth in Section 2.1 shall not permit either Monsanto or NSC to export Aspartame to the Excluded Territory under the Patents and Know-How.

*Id.*, § 2.3. On May 1, 2002, the parties entered into the Letter Agreement to supplement and amend the License Agreement. One purpose of the Letter Agreement was to clarify NutraSweet's obligations under Section 2.3 of the License Agreement as follows:

> Without limiting Section 2.3 of the R&L Agreement, with respect to aspartame manufactured by or on behalf of NSC under the Patents and Know-How ("Licensed Aspartame") NSC agrees that it will not (a) itself export, or (b) knowingly indirectly export, participate in the export, or cause or induce others to export such aspartame to any Excluded Territory, including without limitation by selling Licensed Aspartame to a person or entity located in the Territory that NSC knows intends to export such Licensed Aspartame to the Excluded Territory.

Letter Agreement, ¶ 3.

20. The "Excluded Territory" is defined in the License Agreement to mean the countries listed in Exhibit B to the License Agreement. *Id.*, § 1(5) & Ex. B. The European Customer has requested delivery of Aspartame from NutraSweet to the Czech Republic, which is located in the Excluded Territory.

21. The U.S. and Canadian patents identified on Exhibits A and A-2 of the License Agreement, and their foreign counterparts in the Territory, are applicable to the manufacture and sale of Aspartame only in the country of their registration. As a result, the only patents included in the definition of Patents and Know-How applicable to the manufacture of Aspartame in Korea in accordance with the Daesang Process for export to the Excluded Territory are the unexpired Korean counterparts to the patents listed on Exhibits A and A-2 of the License Agreement.

22. The manufacture of Aspartame in Korea in accordance with the Daesang Process does not use any "Patents and Know-How" as that term is defined in the License Agreement.

B. **Ajico's Disputes With Daesang**

23. Ajico and Daesang have previously engaged in litigation related to the Daesang Process and specifically regarding Daesang's sales of Aspartame into the Excluded Territory, specifically Europe. For example in January 2001, Ajico instituted litigation against Daesang in

the District Court of The Hague alleging that Aspartame manufactured by Daesang and imported into Europe infringed one of Ajico's European patents, EP 0 091 787. *In re Ajinomoto Co. v. Daesang Corp.*, Dist. Ct. of The Hague, Docket No. 2001/1137. The Hague court dismissed Ajico's claims in their entirety.

24. These disputes between Ajico and Daesang involved the Daesang Process which NutraSweet has acquired as part of its purchase of the Daesang Assets.

C. **NutraSweet's Imminent Delivery Of Aspartame Into The Excluded Territory**

25. On May 19, 2005, the European Customer issued a purchase order to NutraSweet for 100 kg of Aspartame for delivery into the Czech Republic, one of the countries included in the Excluded Territory.

26. On May 20, 2005, NutraSweet accepted the purchase order, thereby entering into a binding contract to deliver Aspartame to the European Customer.

27. NutraSweet will fill the purchase order with Aspartame manufactured in Korea in accordance with the Daesang Process into the Excluded Territory for delivery to the European Customer.

28. NutraSweet further intends to fill other orders for Aspartame from customers in the Excluded Territory with Aspartame manufactured in Korea in accordance with the Daesang Process.

29. The manufacture of Aspartame in Korea in accordance with the Daesang Process does not use and is not covered by any of the "Patents and Know-How." Thus, the licenses granted in Section 2.1 of the Agreement are not involved in the manufacture of Aspartame in Korea in accordance with the Daesang Process.

30. The sale and delivery of Aspartame manufactured in Korea in accordance with the Daesang Process into the Excluded Territory does not constitute a breach or default in performance of any of the provisions of the License Agreement by NutraSweet.

31. Ajico's aggressive pursuit of litigation against Daesang regarding the sale of Aspartame in the Excluded Territory presents an immediate and real threat that Ajico will claim that the sale and delivery of Aspartame, manufactured in Korea in accordance with the Daesang Process, to or in the Excluded Territory constitutes a breach of the License Agreement.

32. Under Section 6.2 of the License Agreement, there exists an immediate and real threat that Ajico will attempt to terminate the License Agreement by wrongfully alleging that NutraSweet has breached the License Agreement. License Agreement, § 6.2.

33. NutraSweet has a reasonable apprehension that Ajico will attempt to take harmful action as a result of NutraSweet's delivery of Aspartame to the European Customer, including without limitation giving notice of termination under Section 6.2 of the License Agreement.

34. Even worse, Ajico may deliberately delay notice of termination of the License Agreement until NutraSweet has made substantial sales of Aspartame into the Excluded Territory and is unable to effect a cure of the alleged breach or default pursuant to Section 6.2 of the License Agreement.

35. A declaratory judgment that NutraSweet's sale of such Aspartame in the Excluded Territory (as defined in the License Agreement) does not constitute a breach or default in performance of any of the provisions of the License Agreement will settle important commercial rights and guide future dealings between NutraSweet and Ajico.

36. There exists an actual controversy between NutraSweet and Ajico regarding the scope of the License Agreement as applied to Aspartame manufactured in Korea in accordance with the Daesang Process. This controversy is ripe for adjudication because NutraSweet has

entered into a binding contract to deliver Aspartame manufactured in Korea in accordance with the Daesang process into the Excluded Territory to the European Customer.

WHEREFORE Plaintiff, The NutraSweet Company, prays that this Court will:

a. Render a declaratory judgment that the sale into the Excluded Territory (as that term is defined in the License Agreement) of Aspartame manufactured in Korea in accordance with the Daesang Process does not constitute a breach or default in performance of any provision of the License Agreement by NutraSweet;

b. Render a declaratory judgment that Ajico may not terminate the License Agreement pursuant to Section 6.2 because of any sale into the Excluded Territory (as that term is defined in the License Agreement) of Aspartame manufactured in Korea in accordance with the Daesang Process; and

c. Grant such other relief as the Court deems necessary and just.

Dated: May 20, 2005

PRICKETT, JONES & ELLIOTT, P.A.

By: _____
James L. Holzman (Bar ID #663)
Gary F. Traynor (Bar ID #2131)
J. Clayton Athey (Bar ID #4378)
1310 King Street
Wilmington, Delaware 19801
(302) 888-6500
jlholzman@prickett.com
gftraynor@prickett.com
jcathey@prickett.com
Attorneys for Plaintiff

OF COUNSEL:
Steven P. Handler
David F. Wentzel
John P. Killacky
Jeremy Root
McDermott, Will & Emery
227 West Monroe Street
Chicago, IL 60606
(312) 372-2000

CHI99 4464327-6.058468.0018