**Re: The NutraSweet Company v. Ajinomoto Co., Inc.**

**Exhibit 1 to Complaint**

## RELEASE AND LICENSE AGREEMENT

THIS RELEASE AND LICENSE AGREEMENT (this "Agreement") is made and entered into as of this 25th day of May, 2000 (the "Effective Date"), by and among Monsanto Company, a Delaware corporation having its principal place of business at 800 North Lindbergh Boulevard, St. Louis, Missouri 63167, United States of America ("Monsanto"), The NutraSweet Company, a Delaware corporation having its principal place of business c/o Monsanto Company, Merchandise Mart, 200 World Trade Center, Suite 900, Chicago, Illinois 60654, United States of America ("NSC"), and Ajinomoto Co., Inc., a Japanese corporation having its principal place of business at 15-1, Kyobashi It-Chome, Chuo-ku, Tokyo, 104-8315 Japan ("Buyer").

### WITNESSETH:

WHEREAS, Monsanto, NSC and Buyer are parties to that certain Purchase Agreement dated as of February 1, 2000 (the "Purchase Agreement");

WHEREAS, pursuant to the Purchase Agreement, Buyer has agreed to release Monsanto, NSC, their Affiliates and the Successor Business (as defined below) from claims under Buyer's intellectual property, and Monsanto and NSC have agreed to release Buyer and its Affiliates from claims under Monsanto's and NSC's intellectual property, as set forth herein; and

WHEREAS, pursuant to the Purchase Agreement, Buyer has agreed to license to Monsanto and NSC certain of Buyer's patent and know-how rights, as set forth herein.

NOW, THEREFORE, in consideration of the mutual promises and covenants and the terms and conditions set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### ARTICLE 1 - DEFINITIONS

As used in this Agreement, the following terms shall have the following definitions:

(1)    "Affiliate" shall mean, with respect to a person or entity, any other person or entity directly, or indirectly through one or more intermediaries, now or hereafter, controlling, controlled by, or under common control with such person or entity.

(2)    "Aspartame" shall mean α-L-aspartyl-L-phenylalanine methyl ester.

(3)    "Counterpart" shall mean, with respect to a patent or patent application, all U.S. or foreign counterparts in the Territory (as defined below) to such patent or patent applications, which shall include: (i) all patents and patent applications in any jurisdiction in the Territory that are based upon, claim priority from, or are derived from (a) such patent or patent application or (b) any other patent or patent application in any jurisdiction in the Territory that is based upon, claims priority from, or is derived from such patent or patent application (in each case including: patent applications,



relselicen.5-22.wpd

priority applications, continuations, continuations-in-part or divisions); (ii) all patents and patent applications in any jurisdiction in the Territory upon which such patent or patent application is based, from which such patent or patent application claims priority or from which such patent or patent application is derived; and (iii) all other patents and patent applications in any jurisdiction that cover any of the inventions claimed by such patent or patent application.

(4)    "Excluded Patents" shall mean patents and patent applications that are both: (i) related to L-Phenylalanine; and (ii) not related to recovery, crystallization or purification processes or process steps for L-Phenylalanine.

(5)    "Excluded Territory" shall mean the countries listed in Exhibit B.

(6)    "Patents and Know-How" shall mean: (i) all patents, patent applications and know-how licensed by Buyer or its Affiliates to Monsanto, NSC or their Affiliates as of the Effective Date (whether or not pursuant to the Prior Agreements) which are listed on Exhibit A (as updated immediately prior to the Effective Date); (ii) those of such patents and patent applications as are listed on Exhibit A-2 (as updated immediately prior to the Effective Date) and know-how that are owned by Buyer or its Affiliates as of the Effective Date with regard to the manufacture of Aspartame and L-Phenylalanine which are utilized, or have been asserted by Buyer or its Affiliates to be utilized, by Monsanto, NSC or their Affiliates at Monsanto's Augusta, Georgia facility prior to, or as of, the Effective Date; and (iii) all Counterparts to such patents and patent applications. It is confirmed that none of the Excluded Patents are or shall be included in the Patents and Know-How.

(7)    "Prior Agreements" shall mean: (i) that certain License Agreement dated September 18, 1980 between Buyer and NSC; (ii) that certain Supplemental License Agreement dated December 18, 1992 between Buyer and NSC, as amended; and (iii) that certain Supplemental License and Settlement Agreement dated December 18, 1992 between Buyer and NSC.

(8)    "Successor Business" shall mean any entity that will have succeeded to all or substantially all of Monsanto's worldwide sweetener ingredients business other than its direct or indirect interests in the Joint Ventures (as defined in the Purchase Agreement).

(9)    "Territory" shall mean worldwide, except for the Excluded Territory.

## ARTICLE 2 - LICENSE

**Section 2.1    Grant.** Buyer hereby grants to each of Monsanto and NSC a perpetual, irrevocable, royalty-free, non-exclusive license and right under the Patents and Know-How: (i) to use, make, offer to sell and sell Aspartame in the Territory (including in or from any facility located within the Territory); and (ii) to use and make L-Phenylalanine in the Territory (including in or from any facility located within the Territory) for the manufacture of Aspartame in the Territory (including in or from any facility located within the Territory). In the event that Buyer (including any employee of Buyer with responsibility for any intellectual property matters or Buyer's relationship with Monsanto) becomes aware of any patents or patent applications not listed on Exhibit A or Exhibit A-2 that should be so listed in order to effectuate the intent of the parties under Article 1(6) and Section 2.1



of this Agreement, then Exhibit A and/or Exhibit A-2 shall be revised to include such patents or patent applications, except for the Excluded Patents.

**Section 2.2    Right to Sublicense.** Each of Monsanto and NSC shall have the right to grant sublicenses of the license and right set forth in Section 2.1 to: (i) its Affiliates; (ii) its toll manufacturers for the purpose of having such toll manufacturers make Aspartame for sale by Monsanto and NSC, as applicable; and (iii) its customers for such customers to use Aspartame.

**Section 2.3    No Export to Excluded Territory.** The right and license set forth in Section 2.1 shall not permit either Monsanto or NSC to export Aspartame to the Excluded Territory under the Patents and Know-How.

**Section 2.4    Reservation of Rights.** All right, title and interest in and to the Patents and Know-How shall be at all times solely vested in Buyer. No rights or licenses, express or implied, other than those expressly granted in this Article 2 are granted by this Agreement.

## ARTICLE 3 - RELEASE

**Section 3.1    Mutual Release.** Subject to the exclusions set forth in Section 3.3, each of Monsanto, NSC and their Affiliates hereby releases, acquits and forever discharges Buyer and its Affiliates from, and each of Buyer and its Affiliates hereby releases, acquits and forever discharges each of Monsanto, NSC, the Successor Business and their respective Affiliates from, any and all claims or liability arising out of acts or omissions prior to the Effective Date by Monsanto, NSC, Buyer or their Affiliates (whether known or unknown or asserted or unasserted and whether incurred in the past, present or future and including claims or liability arising from infringement, misappropriation, breach of contract or otherwise) relating: (i) to any patent, patent application or know-how that (A) is owned by Monsanto, NSC or Buyer (as applicable) as of the Effective Date and (B) relates to the research, development, manufacture, use or sale of Aspartame or to the research, development, manufacture, use or sale of L-Phenylalanine to be used in the manufacture of Aspartame, to the extent related to the recovery, crystallization or purification processes thereof; and (ii) to any Counterparts to any patent or patent application described in (i).

**Section 3.2    Additional Release.** Without limiting the generality or applicability of the release set forth in Section 3.1, Buyer hereby further releases, acquits and forever discharges Monsanto, NSC, the Successor Business and their respective Affiliates from any and all claims or liability arising out of acts or omissions prior to the Effective Date by Monsanto, NSC or their Affiliates (whether known or unknown or asserted or unasserted and whether incurred in the past, present or future, and including claims or liability arising from infringement, misappropriation, breach of contract or otherwise) relating to any of the patents listed on Exhibit C or any Counterparts thereto.

**Section 3.3    Exclusions.** The release set forth in Sections 3.1 and 3.2 above shall not apply to: (i) any claims relating to any patents based on any patent applications newly filed by Monsanto, NSC, Buyer or their respective Affiliates after the Effective Date which are not the Counterpart of any patents or patent applications filed on or before the Effective Date; (ii) any claims relating to any know-how newly obtained by Monsanto, NSC, Buyer or their respective Affiliates after the Effective Date; (iii) any claims or liabilities arising within the Excluded Territory; or (iv) any claims by any third

party (other than Affiliates of Monsanto, NSC or Buyer) against Monsanto, NSC or Buyer or their respective Affiliates involving breach of contract, negligence, product liability, inequitable conduct in the obtaining of patents, criminal or unlawful conduct or any governmental regulatory affairs matter.

## ARTICLE 4 - CONFIDENTIALITY

Each of Monsanto and NSC shall use reasonable efforts to maintain the confidentiality of any know-how licensed by Buyer to it hereunder and shall not use such know-how for any purpose other than the purposes set forth herein. The foregoing obligation shall not apply to know-how that: (i) is in or hereafter enters the public domain through no fault of Monsanto or NSC, as applicable; (ii) is obtained by Monsanto or NSC, as applicable, from a third party having the legal right to use and disclose same; or (iii) is independently developed by Monsanto or NSC, as applicable. Neither Monsanto nor NSC shall be liable to Buyer for disclosure of any know-how licensed hereunder if such disclosure is made pursuant to a governmental or judicial mandate, provided that Monsanto or NSC, as applicable, shall give Buyer prompt notice of such mandate prior to such submission. Such disclosure shall not give Monsanto or NSC the right to disclose such know-how for any other purpose.

## ARTICLE 5 - INDEMNIFICATION

It is understood that Buyer shall have no responsibility for Aspartame manufactured and sold by Monsanto or NSC or for any results which may arise from the utilization of any of the Patents and Know-How licensed to Monsanto and NSC pursuant hereto. In this regard, each of Monsanto and NSC agrees to indemnify, defend and hold Buyer, its Affiliates and its and their officers, directors and employees harmless from and against any and all liability, damage, loss, cost and expense, including reasonable attorneys' fees resulting from the use, sale and/or distribution of Aspartame manufactured by it or its sublicensees pursuant to this Agreement unless such cost, claim, suit, expense or damage resulted from the error, omission or negligent act of Buyer in the performance of its obligations under this Agreement. Buyer shall promptly notify Monsanto or NSC, as applicable, upon receipt of any suit, claim or potential claim to which Monsanto's or NSC's foregoing agreement to indemnify is applicable and shall allow Monsanto or NSC, as applicable, to control and handle any such claim or suit at Monsanto's or NSC's expense, as applicable. Monsanto or NSC, as applicable, shall be given adequate authority, information and prompt assistance and cooperation for the defense of the same, and copies of all documents relating to such suit or claim shall be delivered to Monsanto or NSC, as applicable.

## ARTICLE 6 - TERM AND TERMINATION

**Section 6.1    Term.** The term of this Agreement shall commence on the Effective Date and continue thereafter in perpetuity.

**Section 6.2    Termination.** Buyer shall have the right to terminate this Agreement upon written notice to Monsanto and NSC in the event that Monsanto or NSC shall have breached or defaulted in performance of any of the provisions of this Agreement, and such breach or default shall not have been cured within 60 days after receipt of written notice thereof to Monsanto or NSC by Buyer.

NSC shall have the right to terminate this Agreement upon written notice to Buyer in the event that Buyer shall have breached or defaulted in performance of any of the provisions of this Agreement, and such breach or default shall not have been cured within 60 days after receipt of written notice thereof to Buyer by NSC. Notwithstanding any termination of this Agreement pursuant to this Section 6.2, all provisions of Articles 3, 4 and 5 of this Agreement shall survive in full force and effect in perpetuity.

## ARTICLE 7 - FORCE MAJEURE

Neither of the parties hereto shall be liable to the other party for failure to perform any of its obligations hereunder or for loss or damages suffered by such other party due to strikes, riots, storms, fires, acts of God, acts of Government, or any cause similar to the foregoing, beyond the reasonable control of the party, the performance of whose obligations hereunder is affected by such cause, and the performance of obligations hereunder shall be suspended during, but no longer than, the existence of such cause.

## ARTICLE 8 - PRIOR AGREEMENTS

As of the Effective Date, the Prior Agreements shall terminate and have no further force and effect.

## ARTICLE 9 - MISCELLANEOUS

**Section 9.1    Entire Agreement.** This Agreement (including all exhibits) constitutes the full understanding of the parties, a complete allocation of risks between them and a complete and exclusive statement of the terms and conditions of their agreement relating to the subject matter hereof and supersedes any and all prior agreements, whether written or oral, that may exist between the parties with respect thereto; provided, however, that this provision is not intended to abrogate the Purchase Agreement or any other agreements entered into by the parties pursuant thereto. Except as otherwise specifically provided in this Agreement, no conditions, usage of trade, course of dealing or performance, understanding or agreement purporting to modify, vary, explain or supplement the terms or conditions of this Agreement shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgment or acceptance of documents containing terms or conditions at variance with or in addition to those set forth in this Agreement, except as otherwise specifically agreed to by the parties in writing.

**Section 9.2    Waivers.** No waiver by a party with respect to any breach or default or of any right or remedy and no course of dealing or performance, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver is expressed in writing signed by the party to be bound. Failure of a party to exercise any right shall not be deemed a waiver of such right or rights in the future.

**Section 9.3    Parties Bound by Agreement; Successors and Assigns.** The terms, conditions and obligations of this Agreement shall inure to the benefit of and be binding upon the parties hereto and the respective successors and assigns thereof. Buyer shall not transfer or assign its rights, duties or obligations hereunder or any part thereof to any other person or entity without the prior written

consent of both Monsanto and NSC. Neither Monsanto nor NSC shall transfer or assign its rights, duties or obligations hereunder or any part thereof to any person or entity, other than the Successor Business or its Affiliates, without the prior written consent of Buyer. Any attempt to assign this Agreement other than as set forth in this Section 9.3 shall be void.

**Section 9.4    Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall for all purposes be deemed to be an original and all of which shall constitute the same instrument.

**Section 9.5    Notices.** Any notice, request, instruction or other document to be given hereunder by any party hereto to any other party hereto must be in writing and delivered personally (including by overnight courier or express mail service) or sent by registered or certified mail, or be transmitted by facsimile or other means of electronic data transmission, confirmed by express mail or overnight courier, in each case with postage or fees prepaid,

|  |  |
|---|---|
| If to Buyer: | Ajinomoto Co., Inc.<br>15-1, Kyobashi It-Chome, Chuo-ku<br>Tokyo, 104-8315<br>Japan<br>Attn:  General Manager, Legal Department<br>Telephone No.:  (0)3-5250-8245<br>Facsimile No.: (0)3-5250-8356 |
| If to Monsanto: | Monsanto Company<br>800 North Lindbergh Boulevard<br>St. Louis, Missouri  63167<br>Attn:  Office of the General Counsel<br>Telephone No.:  (314) 694-1000<br>Facsimile No.: (314) 694-6399 |
| If to NSC: | The NutraSweet Company<br>Merchandise Mart<br>200 World Trade Center, Suite 900<br>Chicago, Illinois 60654<br>Attn:  President<br>Telephone No.: (312) 840-5000<br>Facsimile No.: (312) 840-5111 |

or to such other address as may be specified from time to time in a notice given by such party. Any notice which is delivered personally in the manner provided herein shall be deemed to have been duly given to the party to whom it is directed upon actual receipt by such party or the office of such party. Any notice which is addressed and mailed in the manner herein provided shall be conclusively presumed to have been duly given to the party to which it is addressed at the close of business, local time of the recipient, on the fourth business day after the day it is so placed in the mail or, if earlier, the time of actual receipt.



relselicen.5-22.wpd

**Section 9.6    Governing Law; Jurisdiction.**

(a)    The validity, interpretation and performance of this Agreement and any dispute connected with this Agreement shall be governed by and determined in accordance with the statutory, regulatory and decisional law of the State of Delaware, United States of America (exclusive of such state's choice or conflicts of laws rules) and, to the extent applicable, the federal statutory, regulatory and decisional law of the United States (except for the U.N. Convention on Contracts for the International Sale of Goods, April 10, 1980, U.N. Doc. A/Conf. 97/18, 19 I.L.M. 668, 671 (1980) reprinted in Public Notice, 52 Fed. Reg. 662-80 (1987), which is hereby specifically disclaimed and excluded).

(b)    Any suit, action or proceeding against any party hereto with respect to the subject matter of this Agreement, or any judgment entered by any court in respect thereof, must be brought or entered in the United States District Court for the District of Delaware, and each such party hereby irrevocably submits to the jurisdiction of such court for the purpose of any such suit action, proceeding or judgment. If such court does not have jurisdiction over the subject matter of such proceeding or, if such jurisdiction is not available, then such action or proceeding shall be brought or entered in the Court of Chancery of the State of Delaware, County of New Castle, and each party hereby irrevocably submits to the jurisdiction of such court for the purpose of any such suit, action, proceeding or judgment. Each party hereto hereby irrevocably waives any objection which any of them may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement brought as provided in this subsection, and hereby further irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. To the extent each party hereto has or hereafter may acquire any immunity from jurisdiction or from legal process with respect to itself or its property, each party hereto hereby irrevocably waives such immunity with respect to its obligations under this subsection. The parties hereto agree that exclusive jurisdiction of all disputes, suits, actions or proceedings among the parties hereto with respect to the subject matter of this Agreement lies in the United States District Court for the District of Delaware or the Court of Chancery of the State of Delaware, County of New Castle, as hereinabove provided. Each party hereby irrevocably appoints The Corporation Trust Company, having an address at 1209 Orange Street, Wilmington, Delaware 19801 as its agent to receive on its behalf and its properties services of copies of any summons and complaint and any other pleadings or process of any summons and complaint and any other pleadings or process which may be served in any such action or proceeding. Service by mailing (by certified mail, return receipt requested) or delivering a copy of such process to a party in care of its agent for service of process as aforesaid shall be deemed good and sufficient service thereof, and each party hereby irrevocably authorizes and directs its respective agent for service of process to accept such service on its behalf.

**Section 9.7    No Third-Party Beneficiaries.** With the exception of the parties to this Agreement and the Successor Business, there exists no right of any person to claim a beneficial interest in this Agreement or any rights occurring by virtue of this Agreement.

**Section 9.8    Interpretation.** Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders. Words importing the singular number shall include the plural number and vice versa unless the context shall otherwise indicate. References to Articles, Sections and other subdivisions of this Agreement are to the Articles, Sections and other

subdivisions of this Agreement as originally executed. The headings of this Agreement are for convenience and do not define or limit the provisions hereof. Words importing persons include firms, associations and corporations. The terms "herein," "hereunder," "hereby," "hereto," "hereof" and any similar terms refer to this Agreement; the term "heretofore" means before the date of execution of this Agreement; and the term "hereafter" means after the date of execution of this Agreement. References to the terms "include, "includes" or "including" shall mean without limitation.

*     *     *     *     *



**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed by their authorized representatives as of the Effective Date.

**MONSANTO COMPANY**

By: _____

Name: <u>Jan S. Wolpert</u>

Title: <u>Authorized Representative</u>

**THE NUTRASWEET COMPANY**

By: _____

Name: David T. Bowman

Title: Asst Secretary

**AJINOMOTO CO., INC.**

By: _____

Name: _____

Title: _____

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their authorized representatives as of the Effective Date.

**MONSANTO COMPANY**

By: _____
Name: _____
Title: _____


**THE NUTRASWEET COMPANY**

By: _____
Name: _____
Title: _____


**AJINOMOTO CO., INC.**

By: _____
Name: __Tadao Toki_____
Title: __Managing Director_____

**EXHIBIT A**

<u>United States Patents</u>

REDACTED

3

REDACTED



## Canadian Patents

REDACTED

**EXHIBIT A-2**

<u>United States Patents</u>

REDACTED

<u>**Canadian Patents**</u>

REDACTED



## EXHIBIT B

## EXCLUDED TERRITORY

West Europe:

Austria
Belgium
Cyprus
Denmark
Finland
France
Germany
Greece
Holland
Ireland
Italy
Luxembourg
Norway
Portugal
Spain
Sweden
Switzerland
United Kingdom

East Europe:

Albania
Bulgaria
the former Czechoslovakia
Hungary
Poland
Romania
the former Soviet republics
the former Yugoslavia

Other Countries:

Japan
Algeria
Israel
Morocco
Tunisia
Turkey

**EXHIBIT C**

**ADDITIONAL RELEASE**

<u>United States Patents</u>

REDACTED