Exhibit C

**NUTRASWEET COMPANY**
*10 S. Wacker Drive*
*Suite 3200*
*Chicago, IL 60606*

Phone: (312) 873-5006   Fax: 312-873-5051

Date: February 28, 2001

TO:  Dr. Tetsuo Kono

Fax Number: 011-81-44-244-9619

From:  David Bowman

Subject:

Number of Pages Including cover: 3

ESSAGE:

This facsimile is for the sole use of the individual(s) to whom it is addressed, and may contain information that is privileged and confidential. Any other disclosure, duplication, distribution, or use of this transmission is strictly prohibited.

Transmitted from fax number (312) 873-5053

## The NutraSweet Company

David T. Bowman
Executive Vice President, General Counsel & Secretary

February 28, 2002

Dr Tetsuo Kono
General Manager
Intellectual Property Department
Ajinomoto Co., Inc.
1-1, Suzuki-cho, Kawasaki-ku
Kawasaki, Kanagawa 210-8681
Japan

Re: Release And License Agreement

Dear Dr Kono:

This will confirm the meeting held in the New York offices of Cleary, Gottlieb, Steen & Hamilton on February 20, 2002, between Dr. Hajimu Monoka, Mr. Tomomi Miyama and Mr. Joshua Rawson representing the interests of Ajinomoto Co., Inc., and me, with Mr Jeff Hoster participating by telephone, regarding the Release And License Agreement entered into between Monsanto Company, NutraSweet and Ajinomoto

During the meeting I was provided with a copy of a letter written by Mr. Toshio Takahaski, dated May 9, 2000, addressed to Mr. R. Scott Falk, outside legal counsel to Monsanto Company This letter was offered in support of Ajinomoto's interpretation of Section 2.3 of the Release And License Agreement. At the conclusion of the meeting, it was requested that NutraSweet respond to the matters raised in Ajinomoto's recent correspondence and in our meeting.

Based upon a review of the available information, including discussions with participants in the negotiation of the Release And License Agreement, NutraSweet again confirms that it is in full compliance with the terms of the Release And License Agreement. Specifically, NutraSweet has not exported Aspartame to the Excluded Territory under the Patents and Know-How (as such terms are defined in the Release And License Agreement)

NutraSweet understands why Ajinomoto has taken its position based on a reading of the documents referred to by Ajinomoto during our meeting. However, these documents can be distinguished from the express terms of the Release And License Agreement. First, the letter of intent entered into by Ajinomoto and Monsanto Company in November, 1999, does not support Ajinomoto's position as was suggested in our meeting. Instead, the language in the letter of

10 S. Wacker Drive, Suite 3200, Chicago, IL 60606
tel 312.873.5006 fax 312.873.5033 david.r.bowman@nutrasweet.com
www.nutrasweet.com

intent is similar to the language in the Release And License Agreement, addressing only the export by Monsanto, and not its customers, to the Territory and Japan. Even if the language did support Ajinomoto's stated position, the transaction terms set forth in a letter of intent frequently change over the course of the negotiation of the anticipated transactions and the execution of the definitive agreements. The May, 2000 letter can also be distinguished as the letter was specifically directed to the then pending Wrigley matter. As Ajinomoto is aware, a separate resolution was reached with regard to the supply of aspartame to Wrigley. Further, NutraSweet has not seen, and is not aware of any evidence that Monsanto representatives are in agreement with Ajinomoto's interpretations set forth in the above letter.

The express terms of Section 2.3 clearly do not prohibit the actions of NutraSweet or its customers. The efforts of Ajinomoto to include such limiting language in the agreement were expressly negotiated and rejected by Monsanto, and are not found in the final draft. Therefore, Ajinomoto now appears to be suggesting to NutraSweet that the Release And License Agreement be interpreted in a manner that was expressly rejected when the agreement was negotiated and signed. The interpretation is also inconsistent with the express statements made to J.W. Childs upon the purchase of the NutraSweet business from Monsanto in May, 2000.

NutraSweet understands that Ajinomoto continues to have serious concerns about this matter. Rather than see this matter escalate to a level where Ajinomoto formally provides a notice of breach under the Release And License Agreement, NutraSweet would like to continue the good faith efforts of the parties to amicably resolve the differences that exist. It is NutraSweet's understanding that all correspondence and discussions have been in an attempt to resolve the current dispute, and that no prior correspondence of Ajinomoto to NutraSweet constitutes written notice under the Release And License Agreement that NutraSweet has breached or defaulted in its performance thereunder. Please advise if our understanding is incorrect.

NutraSweet and Ajinomoto have always been able to resolve their differences and maintain the good relationship that exists. It is our belief that we will be able to do so again with respect to this matter. It is therefore requested that Ajinomoto provide to NutraSweet a letter that sets forth a proposal for the resolution of our differences regarding the Release And License Agreement, including drafts of any documents that Ajinomoto proposes be entered into by the parties.

No part of this letter should be construed as an admission as to any infringement, breach or other wrongdoing by NutraSweet with respect to the matters addressed herein.

Kind regards,

David I. Bowman
General Counsel

c.c. Joshua H. Rawson, Esq.