# Exhibit A

Case 1:05-cv-00318-SLR   Document 10-2   Filed 07/11/2005   Page 1 of 6

LEXSEE 1997 U.S. DIST. LEXIS 17659

ENVIROMETRICS SOFTWARE, INC., Plaintiff, v. GEORGIA-PACIFIC CORPORATION, Defendant.

Civil Action No. 97-243-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*1997 U.S. Dist. LEXIS 17659*

November 4, 1997, Decided

NOTICE: [*1] FOR ELECTRONIC PUBLICATION ONLY

DISPOSITION: Plaintiff's motion to enjoin denied and defendant's motion to dismiss granted in part and denied in part.

LexisNexis(R) Headnotes

COUNSEL: For plaintiff: M. Duncan Grant, Esquire, Daniel V. Folt, Esquire, Tara L. Lattomus, Esquire, Pepper, Hamilton & Scheetz LLP, Wilmington, Delaware.

For defendant: Thomas C. Grimm, Esquire, Karen L. Pascale, Esquire, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware.

JUDGES: Sue L. Robinson, District Judge.

OPINIONBY: Sue L. Robinson

OPINION:

MEMORANDUM OPINION

Dated: November 4, 1997

Wilmington, Delaware

ROBINSON, District Judge

INTRODUCTION

Pending before the court is a motion filed by plaintiff EnviroMetrics Software, Inc. ("ESI") to enjoin a related case pending in the United States District Court for the Northern District of Georgia. Also pending is a motion to dismiss the instant litigation filed by defendant Georgia-Pacific Corporation ("G-P"). The underlying facts to the parties' dispute are relatively straightforward.

ESI is a Delaware corporation with its principal place of business in New Castle, Delaware. (D.I. 10, Ex. B at P 3) ESI is in the business of writing computer software that may be used [*2] by companies with industrial operations to monitor and to provide reporting on air, water, and solid waste emissions that are being generated by their industrial processes. (D.I. 10, Ex. B at P 2) G-P is a Georgia corporation which manufactures paper and paper products in numerous plants located throughout the United States.

As of May 30, 1995, ESI and G-P entered into a contract, entitled Computer Software License and Services Agreement (the "License Agreement"), whereby ESI licensed use of its "PlantWare" software to G-P. The License Agreement expressly set forth numerous warranties respecting PlantWare (including performance and documentation warranties), as well as functional enhancements. (D.I. 7, P 3). G-P paid $ 1,000,000 to ESI for PlantWare and over $ 400,000 for "consulting" services in connection with PlantWare. (D.I. 7, P 4)

ESI and G-P also entered into a separate agreement entitled Program and Documentation Maintenance Agreement (the "Maintenance Agreement") as of May 30, 1995, in which ESI agreed to provide G-P with certain specified maintenance services for the PlantWare software. (D.I. 10, Ex. B at P 7) Pursuant to the terms of the Maintenance Agreement, G-P owed [*3] ESI $ 20,000 as of July 15, 1996, and an additional $ 20,000 as of December 15, 1996, for services provided between June 15, 1996 and June 15, 1997. (D.I. 10, Ex. B at P 8)

G-P asserts that during the two years following execution of the License Agreement, it reported to ESI "more than 100 deficiencies, defects and bugs with PlantWare. . ., many of which were fundamental, and irremedial, flaws in the software, and many others of which were not corrected within the time period specified by the License Agreement." (D.I. 7, P 5) ESI relatedly asserts that when G-P completed payment of the $ 1,000,000 under the License Agreement on August 14, 1996, G-P expressly "confirm[ed to ESI] that it accepted the PlantWare software as satisfactory at the conclusion of the acceptance period provided for in the Licensing Agreement." (D.I. 10, Ex. B at P 10)

The parties are in agreement that, at a meeting held on April 22, 1997, G-P demanded reimbursement of the entire $ 1,000,000 it had already paid under the Licensing Agreement, contending that the PlantWare software failed to meet warranty specifications. (D.I. 7, P 7; D.I. 10, Ex. B at PP 11-13) This meeting was followed by a letter to Mr. James [*4] E. Bostic, Jr., a Senior Vice President at G-P, dated April 28, 1997 from David N. Hommrich, President of ESI, whereby ESI offered a "'no-risk' set of services" by which ESI was to help G-P successfully implement PlantWare at two appropriate facilities. Mr. Hommrich concluded his letter with the following: "I look forward to hearing from you, and am hopeful that we can work with you in the near future." (D.I. 15, Ex. A)

Mr. Bostic received Mr. Hommrich's letter on May 2, 1997. Mr. Bostic and Mr. Hommrich had a follow-up conversation on May 12, 1997, as confirmed by a letter dated May 14, 1997 from Mr. Hommrich. Mr. Hommrich ended this letter as follows: "I'll be calling you today to discuss this matter. There are people here, Jim, who are prepared for this challenge and want to work very hard for you. I hope you'll take us up on this offer." (D.I. 15, PP 7-10, Ex. B) During the course of these discussions and without advance warning to G-P, on May 7, 1997, ESI filed a complaint in this court against G-P. n1 Count I of the complaint seeks a declaration under *28 U.S.C. § 2201* et seq. that ESI has not breached the License Agreement. Count II of the complaint is a $ 40,000 breach [*5] of contract claim under the Maintenance Agreement. n2 Count III is a claim for attorneys' fees. n3 (D.I. 1) Not until May 16, 1997, when the complaint was served on G-P's registered agent in Georgia, did G-P understand that the parties' negotiations had been terminated. (D.I. 7, PP 9-10; D.I. 15, Exs. C, D)

n1 Mr. Hommrich averred in this litigation that, "at the time [ESI] filed suit, there were no ongoing settlement negotiations." (D.I. 10, Ex. B at P 15) The record indicates otherwise.

n2 G-P has refused to pay the $ 40,000 due and owing under the Maintenance Agreement.

n3 Both the License Agreement and the Maintenance Agreement provide that if either G-P or ESI commences litigation to enforce its rights under the agreements, "the successful party in any such suit or action shall be entitled to recover from the other such sum as the court may adjudge reasonable as an attorney's fee in such suit or action and in any appeals therefrom." (D.I. 7, Ex. A at P 13.10)

On June 25, 1997, G-P filed an action [*6] in Georgia state court against both ESI and ESI's President, David M. Hommrich, alleging breach of the License Agreement as well as fraud and negligent misrepresentations in connection with G-P's purchase of PlantWare. (D.I. 10, Ex. A) Defendants ESI and Hommrich have removed the state court action to the United States District Court for the Northern District of Georgia.

This court has jurisdiction pursuant to *28 U.S.C. § 1332*. The question at issue is whether the court should exercise such jurisdiction under the Declaratory Judgment Act, *28 U.S.C. § 2201* (a).

**DISCUSSION**

Plaintiff ESI contends that the court must exercise its jurisdiction under the "first-filed" rule. As explained by the Third Circuit in *E.E.O.C. v. University of Pennsylvania, 850 F.2d 969, 976-77 (3d Cir. 1988)*,

> although exceptions to the [first-filed] rule are rare, courts have consistently recognized that the first-filed rule "is not a rigid or inflexible rule to be mechanically applied. . . ." . . . Bad faith . . . and forum shopping have always been regarded as proper bases for departing from the rule. . . . . . **Similarly, courts have rejected the rule** when the second-filed action [*7] had developed further than the initial suit. . . . and **when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum.** . . .
>
> The letter and spirit of the first-filed rule, therefore, are grounded on equitable

Case 1:05-cv-00318-SLR    Document 10-2    Filed 07/11/2005    Page 4 of 6

Page 3
1997 U.S. Dist. LEXIS 17659, *

principles. See *Columbia Plaza Corp. v. Security Nat. Bank, 173 U.S. App. D.C. 403, 525 F.2d 620, 621 (D.C. Cir. 1975)*; cf. *Kerotest Mfg. Co. v. C-O-Two Co., 342 U.S. 180, 183-84, 72 S. Ct. 219, 221-22, 96 L. Ed. 200 (1952)* (under Federal Declaratory Judgment Act, factors relevant to wise judicial administration between coordinate federal courts "are equitable in nature"). To be sure, the rule's primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments. . . . Yet, fundamental fairness dictates the need for "fashioning a flexible response to the issue of concurrent jurisdiction." . . .

(citations omitted)(emphasis added).

Defendant G-P maintains that plaintiff at bar instituted suit first in Delaware "in anticipation of the opposing party's [i.e., G-P's] imminent suit in another, less favorable, forum," [*8] *850 F.2d at 976*, in this case Georgia state court. Not only do these circumstances constitute a recognized exception to the first-filed rule, but constitute as well a framework for analyzing the exercise of the court's discretion under the Declaratory Judgment Act, *28 U.S.C. § 2201*(a), which provides:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

Declaratory relief is appropriately awarded when it will "'serve a useful purpose in clarifying the legal relations in issue or terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Gribin v. Hammer Galleries, 793 F. Supp. 233, 234 (C.D. Cal. 1992)* (quoting *Tierney v. Schweiker, 231 U.S. App. D.C. 37, 718 F.2d 449, 457 (D.C. Cir. 1983))*. It is generally recognized, however, that

> "the Declaratory Judgment Act was not intended to enable a party to obtain a change of tribunal from a state to federal court, and it is not [*9] the function of the federal declaratory action merely to anticipate a defense that otherwise could be presented in a state action." Wright & Miller, § 2758, at 631-632.

*Gribin, 793 F. Supp. at 235*. Indeed, the Third Circuit has instructed courts to look critically at

> "any attempt to circumvent the laudable purposes of the Act, and [to] seek to prevent the use of the declaratory action as a method of procedural fencing, or as a means to provide another forum in a race for res judicata." 6A J. Moore, J. Lucas & G. Girtheer, Jr., Moore's Federal Practice P 57.08[5], at 57-50 (2d ed. 1987) (footnote omitted).

*Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc., 887 F.2d 1213, 1225 (3d Cir. 1989)*; see also *Nat'l Union Fire Ins. Co. of Pittsburgh v. Freeport-McMoRan Inc., 767 F. Supp. 568, 573 (D. Del. 1991)*. Venerable Third Circuit precedent specifically has directed that "it is not one of the purposes of the declaratory judgment acts to enable a prospective . . . defendant to obtain a declaration of non-liability . . . ." *Sun Oil Co. v. Transcontinental Gas Pipe Line Corp., 108 F. Supp. 280, 282 (E.D. Pa. 1953)*. The "race to the courthouse" is particularly [*10] inappropriate under circumstances where "'the party entitled to bring a coercive action [has not] **failed** or **delayed** in bringing it.'" *Gribin, 793 F. Supp. at 236* (quoting *State Farm Fire & Cas. Co. v. Taylor, 118 F.R.D. 426, 429 (M.D. N.C. 1988)* (emphasis in original)), and where (aside from potential litigation costs) there is no "accruing damage," *Crown Cork & Seal Co., Inc. v. Borden, Inc., 779 F. Supp. 33, 36 (E.D. Pa. 1991)*; see also, *ACandS, Inc. v. Aetna Cas. &. Sur. Co., 666 F.2d 819, 823 (3d Cir. 1981)* (because "declaratory judgment relief was intended to avoid . . . the 'accrual of avoidable damages to one not certain of his rights,'" it is proper to exercise jurisdiction where judgment would "affect present behavior, have present consequences and resolve a present dispute.").

The record at bar demonstrates that defendant G-P was dissatisfied with the performance of plaintiff ESI's PlantWare software and initiated discussions with ESI to resolve outstanding problems and complaints. It is apparent under the circumstances presented that defendant G-P is "the party entitled to bring a coercive action." The parties had been discussing G-P's complaints [*11] for only a matter of days (and were still discussing possible resolutions) when plaintiff ESI filed this lawsuit. Such a time frame from notice of breach to lawsuit surely is insufficient to generate the

Case 1:05-cv-00318-SLR  Document 10-2  Filed 07/11/2005  Page 5 of 6

Page 4
1997 U.S. Dist. LEXIS 17659, *

magnitude of uncertainty and insecurity typically associated with declaratory judgment actions, especially where (as here) the conduct at issue was already complete and the damages record thus established. Plaintiff ESI's declaratory judgment action clearly was filed in anticipation of a coercive action by G-P and, as such, constitutes an inappropriate use of the declaratory judgment remedy and an exception to the first-filed rule. The court declines to exercise its discretionary jurisdiction over Count I under these circumstances. n4

> n4 These circumstances include as well the fact that the Georgia action is directed at the President of ESI, David M. Hommrich, an individual who is not a party to the instant lawsuit.

With respect to Counts II and III, plaintiff has carried its burden of persuading the court that [*12] the remaining amounts in controversy are sufficient to satisfy the $ 75,000 jurisdictional prerequisites of 28 U.S.C. § 1332. The question rests on Count III, which seeks attorneys' fees under the License and Maintenance Agreements. Although the court is speculating to some extent in finding jurisdiction, it cannot say to a "legal certainty that the plaintiff cannot recover more than [$ 75,000]" under the circumstances presented. *Suber v. Chrysler Corp., 104 F.3d 578, 583 (3d Cir. 1997)* (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288, 82 L. Ed. 845, 58 S. Ct. 586 (1938))*.

Having so concluded, the court recognizes that it is inefficient to have both this court and the Georgia court handling different pieces of the same dispute. Therefore, the court will order the parties to submit their respective positions on transferring this action to the Northern District of Georgia pursuant to *28 U.S.C. § 1404*.

## CONCLUSION

For the reasons stated, plaintiff's motion to enjoin is denied and defendant's motion to dismiss is granted in part and denied in part.

An order shall [*13] issue.

                                                                    107882
********** Print Completed **********

Time of Request:    July 11, 2005   08:46 AM EDT

Print Number:       1842:52139345
Number of Lines:    169
Number of Pages:




Send To:  TAYLOR, SUSAN
          PRICKETT JONES & ELLIOTT
          1310 KING ST
          WILMINGTON, DE 19801-3220