IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE NUTRASWEET COMPANY,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>AJINOMOTO CO., INC.,  )<br>)<br>Defendant.  )<br>) | C.A. No. 05-318 (SLR) |

## DECLARATION OF JEFFREY M. HOSTER

1. My name is Jeffrey M. Hoster. From March 1988 through September 1999, I was in-house counsel for The NutraSweet Company ("NutraSweet") and its parent, Monsanto Company ("Monsanto"). I continued to serve as outside counsel for Monsanto during its negotiations to sell NutraSweet in May 2000. In those capacities, I was familiar with the Release and License Agreement dated May 25, 2000 ("License Agreement"), as well as various communications between NutraSweet and Ajinomoto Co., Inc. ("Ajinomoto") relating to the License Agreement. Since May 2000, after the sale of NutraSweet by Monsanto to a private party, I have been engaged by NutraSweet to provide legal representation to NutraSweet on a variety of intellectual property matters, including the matters discussed herein.

2. The facts stated herein are based upon my personal knowledge and review of NutraSweet's business documents, certain of which are attached hereto. If called to testify about the facts stated in this declaration, I could competently do so.

3. From December 2001 through May 2002, I participated in numerous communications and meetings between NutraSweet and Ajinomoto related to the License

- 2 -

Agreement. These communications and meetings ultimately resulted the parties' execution of a Letter Agreement dated May 1, 2002 ("Letter Agreement"). A copy of the Letter Agreement is attached as Exhibit A.

4.     The negotiations which led to the Letter Agreement began when Mr. Tetsuo Kono ("Kono") of Ajinomoto sent a letter to Mr. David Bowman ("Bowman") of NutraSweet on or about December 5, 2001. A copy of the December 5, 2001 letter is attached as Exhibit B. In the letter, Kono raised what he described as "the violation by NutraSweet of the export restrictions of the [License Agreement]." Kono requested that Bowman attend a meeting as soon as possible with representatives of Ajinomoto, including Mr. Joshua Rawson ("Rawson"), an attorney with the law firm of Cleary, Gottlieb, Steen & Hamilton, Ajinomoto's legal counsel.

5.     On or about December 7, 2001, Bowman responded by Letter to Kono, seeking supporting documentation or information regarding the concern raised in Kono's December 5, 2001 letter. A copy of the December 7, 2001 letter is attached as Exhibit C. Bowman stated that he would be happy to attend the meeting requested by Kono once NutraSweet had an opportunity to review the information upon which Ajinomoto's concerns were based.

6.     Kono replied to Bowman's request by letter on or about December 12, 2001. A copy of Kono's December 12, 2001 letter is attached as Exhibit D. In that letter, Kono refused to provide NutraSweet with any additional information regarding its concerns in advance of the meeting. Kono stated "I hope that you understand the seriousness of the situation and agree to attend the meeting," and informed Bowman that Ajinomoto's attorney, Rawson, might call to make arrangements for the meeting.

- 3 -

7. On or about December 13, 2001, Bowman replied to Kono and agreed that he and I would attend the proposed meeting. A copy of Bowman's December 13, 2001 letter is attached as Exhibit E. Bowman reiterated that it was difficult to understand the seriousness of Ajinomoto's concerns without being provided any information about those concerns in advance of the meeting.

8. On December 21, 2001, Bowman and I attended the proposed meeting in Chicago. Present from Ajinomoto were Dr. Hajimu Morioka ("Morioka"), Mr. Tomomi Miyama ("Miyama") and Rawson. At that meeting, Ajinomoto provided us with copies of cargo tracking documents that appeared to show two shipments of NutraSweet brand sweetener to Sweden in 2001. Sweden is located in the Excluded Territory under the License Agreement.

9. At that meeting, Rawson threatened NutraSweet with patent infringement litigation if NutraSweet was responsible for the shipments, and he also mentioned the possibility that the License Agreement had been breached. Ajinomoto demanded that NutraSweet determine if it exported the product at issue to Sweden. At all times, NutraSweet has taken the position that the shipments were neither a breach of the License Agreement nor an infringement of any Ajinomoto patents.

10. NutraSweet confirmed that it had not exported the shipments discussed at the meeting to Sweden or any other country in the Excluded Territory. This information was communicated to Ajinomoto in a January 11, 2002 letter from Bowman to Kono, a copy of which is attached as Exhibit F. NutraSweet's records confirmed that the product in question had been sold by NutraSweet to a customer located in the United States. On

- 4 -

January 17, 2002, Ajinomoto confirmed receipt of Bowman's letter. Bowman reiterated that NutraSweet was in compliance with the License Agreement.

11. In early February, Rawson requested another meeting with NutraSweet. Rawson stated that Ajinomoto was not satisfied with the information provided by NutraSweet about the shipments to Sweden and that he had "looked at the contract," referring to the License Agreement. A meeting was scheduled for February 20, 2002.

12. Prior to the February 20, 2002 meeting, Kono sent a letter to Bowman on February 14, 2002, setting forth Ajinomoto's position. A copy of Kono's February 14, 2002 letter is attached as Exhibit G. In that letter, Kono states "based on the information we have learned, NutraSweet's actions are a breach of the agreement, as well as an infringement of Ajinomoto's patent rights."

13. I am aware that on February 20, 2002, Bowman attended a meeting in Rawson's offices in New York. On February 28, 2002, Bowman sent Kono a letter summarizing the meeting and NutraSweet's position. A copy of that letter is attached as Exhibit H. Bowman expressed NutraSweet's desire to resolve the matter amicably and invited Ajinomoto to put forth its proposal for doing so. He also expressed NutraSweet's serious concern that Ajinomoto would escalate the matter to the point where Ajinomoto issued a formal notice of breach under the License Agreement.

14. NutraSweet received no response whatsoever to Bowman's February 28, 2002 letter. On March 27, 2002, Bowman sent a letter seeking Ajinomoto's response, again inviting Ajinomoto to send NutraSweet its proposal for resolution of the issue. A copy of that letter is attached as Exhibit I.

15. Despite Bowman's request, Ajinomoto issued a formal notice of breach on March 27, 2002. A copy of that notice of breach is attached as Exhibit J. Ajinomoto's notice of breach did not include any proposal for resolution of the matter.

16. After issuing its formal notice of breach, thereby invoking NutraSweet's obligation to effect a cure under the License Agreement within 60 days, Ajinomoto and NutraSweet engaged in further discussions directed towards resolving the matter.

17. On or about May 1, 2002, the parties executed the Letter Agreement. The terms of the Letter Agreement were extremely favorable to Ajinomoto. NutraSweet was required to purchase aspartame from Ajinomoto on terms that amounted to a penalty for NutraSweet. Even more significantly, the Letter Agreement added terms to the License Agreement and also provided favorable interpretations to certain existing terms contained in the License Agreement that were not originally negotiated. For example, the Letter Agreement greatly expanded the scope of the export restriction under Section 2.3 of the License Agreement to encompass the conduct at issue in these negotiations. The Letter Agreement also imposed various certification and labeling obligations on NutraSweet.

18. At all times, NutraSweet took the position that such conduct was not a breach of the License Agreement nor was such conduct contemplated by the parties when the License Agreement was negotiated. Nonetheless, NutraSweet agreed to the terms of the License Agreement because Ajinomoto's issuance of a formal notice of breach presented a significant threat that Ajinomoto would terminate the License Agreement at the expiration of the 60-day period. Had Ajinomoto terminated the License Agreement, NutraSweet's ability to continue business would have been threatened.

19. This declaration should not be construed as a general waiver of any matter or communications protected by the attorney-client privilege, work product doctrine, or any other applicable privilege, nor should it be construed as an intention to waive any such privilege.

20. I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 11, 2005                /s/ Jeffrey M. Hoster
                                         Jeffrey M. Hoster

CHI99 4494064-1.058468.0018

## CERTIFICATE OF SERVICE

I, James L. Holzman, hereby certify that on July 11, 2005, I electronically filed the foregoing **DECLARATION OF JEFFREY M. HOSTER** with the Clerk of the Court using CM/ECF, which is available for viewing and downloading, and which will send notification of such filing to the following counsel of record:

> Peter J. Walsh, Jr., Esquire
> Potter Anderson & Corroon, LLP
> 1313 North Market Street
> P. O. Box 951
> Wilmington, DE 19899-0951
> pwalsh@potteranderson.com

James L. Holzman (Bar ID #663)
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899
(302) 888-6509
jlholzman@prickett.com
*Attorneys for Plaintiff,*
*The NutraSweet Company*