# Exhibit A



The NutraSweet Company

May 1, 2002

Mr. Toshio Takahashi
General Manager
Sweetener Department
Global Food & Amino Acids Company
Ajinomoto Co., Inc.
15-1, Kyobashi 1-Chome, Chuo-Ku
Tokyo 104-8315, Japan

Re:   Release and License Agreement

Dear Mr. Takahashi:

I am writing this letter agreement (this "Letter Agreement") to set forth the agreement reached by and among The NutraSweet Company ("NSC"), J.W. Childs Associates, L.P. ("J.W. Childs") and Ajinomoto Co., Inc. ("Ajico") with respect to sales of certain Disputed Aspartame (defined below), that are the subject of the Notice of Breach issued by Ajico dated March 27, 2002.

We have agreed as follows:

1. This Letter Agreement is intended to supplement and amend, but not limit, the Release & License Agreement dated May 25, 2000 (the "R&L Agreement") among NSC, Ajico and Monsanto Company (currently known as Pharmacia Corporation, hereafter "Pharmacia"). The provisions of this Letter Agreement are intended to be and are incorporated in, made a part of, and subject to the R&L Agreement. Unless otherwise specifically defined in this Letter Agreement, each term used herein which is defined in this Letter Agreement has the meaning assigned to such term in the R&L Agreement. For avoidance of doubt, the term "R&L Agreement" refers to the R&L Agreement as amended by this Letter Agreement.

2. NSC and J.W. Childs hereby represent and affirm that all rights and obligations of Pharmacia under the R&L Agreement were assigned to J.W. Childs, and subsequently all rights and obligations of J.W. Childs in the R&L Agreement were assigned to NSC, in each case in accordance with the terms of the R&L Agreement, and that as of the date of this Letter Agreement neither Pharmacia nor J.W. Childs, nor any of their respective affiliates (other than NSC) have any rights or obligations under the R&L Agreement, other than the representations of J.W. Childs expressly set forth in this Letter Agreement.

3. Without limiting Section 2.3 of the R&L Agreement, with respect to aspartame manufactured by or on behalf of NSC under the Patents and Know-How ("Licensed Aspartame") NSC agrees that it will not (a) itself export, or (b) knowingly indirectly export, participate in the export, or cause or induce others to export such aspartame to any Excluded Territory, including without limitation by selling Licensed Aspartame to a person or entity located in the Territory that NSC knows intends to export such Licensed Aspartame to the Excluded Territory.


Mr. Toshio Takahashi, page 2

4. In connection with each sale by NSC of Licensed Aspartame, NSC agrees to expressly provide in the applicable written contract of sale, invoice or other sale documentation, an appropriately prominent provision stating: "Aspartame produced by NSC in the U.S. is not licensed for use in, or sale to entities located in, Western or Eastern Europe, Japan, Algeria, Israel, Morocco, Tunisia or Turkey" (the "Legend"). In the event that NSC violates its obligations under Section 3 of this Letter Agreement, and without limiting the preceding sentence or any other remedy that Ajico may have under the R&L Agreement, Ajico will have the right to require NSC to place the Legend on all containers of Licensed Aspartame sold by NSC. In addition, if during the term the Legend is no longer accurate, the parties shall agree to make reasonable changes to the Legend, including without limitation if NSC produces Licensed Aspartame in a location in the Territory other than the United States.

5. NSC agrees that (a) in the event that it learns of a violation by any customer of the Legend, NSC will notify Ajico of such violation, and (b) at all times will provide reasonable cooperation to Ajico in connection with any legal action by Ajico to enforce any legal rights Ajico may have against NSC's customer in connection with a violation of the Legend.

6. On January 15 of each year of the term of the R&L Agreement, the General Counsel of NSC (or if the General Counsel is not an officer of NSC, then an officer of NSC) will certify in writing to Ajico that NSC is in compliance with its obligations under the R&L Agreement, including without limitation the terms of this Letter Agreement.

7. NSC hereby certifies that (a) as of the date of this Letter Agreement, the amount of Licensed Aspartame that is the subject of the dispute between Ajico and NSC addressed in the Notice of Breach dated March 27, 2002 (the "Disputed Aspartame") totals no more than one hundred thirty (130) metric tons; (b) all of the Disputed Aspartame was sold by NSC to Vopak U.S., its affiliates or agents (together, the "Vopak Group"); and (c) to NSC's knowledge after due inquiry, as of the date of this Letter Agreement the Vopak Group is holding in inventory no more than four (4) metric tons of Disputed Aspartame, the balance of the Disputed Aspartame having been distributed by the Vopak Group to end-user customers prior to the date of this Letter Agreement. NSC represents and warrants that the foregoing information is accurate and complete.

8. Between the date of this Letter Agreement and March 31, 2003 (the "Purchase Period"), NSC agrees to purchase from Ajico the definitive quantity of one hundred thirty (130) metric tons of aspartame (the "Additional Aspartame"), on the terms specified in Annex A, which is incorporated herein and subject to this Letter Agreement.

9. In consideration of and conditioned upon NSC's execution of this Letter Agreement, Ajico (a) hereby withdraws the Notice of Breach dated March 27, 2002; (b) agrees that NSC's agreement to the terms of this Letter Agreement is a full, fair and complete good faith settlement of the dispute between NSC and Ajico respecting the sales of the Disputed Aspartame, without the admission on the part of either party of any wrongdoing or liability under the R&L Agreement; and (c) agrees that the rights granted to Ajico under this Letter Agreement



Mr. Toshio Takahashi, page 3

provide the sole remedy for Ajico against NSC respecting the sales of the Disputed Aspartame prior to the date hereof.

10.  Further, in consideration of NSC's execution of this Letter Agreement, and provided that the amount of Disputed Aspartame held in inventory by the Vopak Group as of the date hereof does not exceed the amount specified in Section 7 of this Letter Agreement, Ajico hereby agrees that it will not commence any action based on rights Ajico may have under its patents against any purchaser of the Disputed Aspartame, on grounds of such person's or entity's sale, purchase, use or resale of the Disputed Aspartame.

11.  This Letter Agreement may be executed in multiple counterparts, each of which will for all purposes be deemed to be an original and all of which will constitute the same instrument. This Letter Agreement shall become effective on the date of the last signature of the Parties hereto, subject to the board approval of Ajico.

By causing its authorized representative to sign below, each of NSC and J.W. Childs hereby agrees to the terms of this Letter Agreement. By causing its authorized representative to countersign below, Ajinomoto hereby agrees to the terms of this Letter Agreement, provided that this Letter Agreement shall not become effective until it shall have been approved by Ajinomoto's Board of Directors. Ajinomoto agrees to notify NSC and J.W. Childs in writing upon approval of such Board of Directors.

Very truly yours,

The NutraSweet Company

By: [signature]
Name: DICK E. ROSA
Title: President

J.W. Childs Associates, L.P.
By: [signature]
Name: [signature]
Title: Chairman [illegible]
PARTNER J.W. CHILDS ASSOC.

Accepted and Agreed:

Ajinomoto Co., Inc.
By: [signature]
Name: TOSHIO TAKAHASHI
Title: GENERAL MANAGER
SWEETENER DEPT.

Attachment (Annex A)



**Annex A**
**Purchase Terms Applicable to the Additional Aspartame**

REDACTED

REDACTED

REDACTED

3