# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| THE NUTRASWEET COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-318 (SLR) |
| | ) | |
| AJINOMOTO CO., INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT AJINOMOTO CO., INC.'S REPLY
## MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

OF COUNSEL:

CLEARY GOTTLIEB
  STEEN & HAMILTON, LLP
Matthew D. Slater, Esquire
Patricia M. McDermott, Esquire
Ilya Shapiro, Esquire
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-1801
(202) 974-1500
mslater@cgsh.com
pmcdermott@cgsh.com
ishapiro@cgsh.com

Dated:    July 22, 2005

POTTER ANDERSON & CORROON, LLP
Peter J. Walsh, Jr. (DSB ID No. 2437)
1313 North Market Street
Post Office Box 951
Wilmington, Delaware 19899-0951
(302) 984-6037
pwalsh@potteranderson.com

*Attorneys for Defendant*
*Ajinomoto Co., Inc.*

691669v1/29191

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 2

I.    FEDERAL CIRCUIT PRECEDENT PROVIDES THE RELEVANT
      STANDARD TO BE APPLIED IN DECIDING THIS MOTION. ..................... 2

      A.    The Federal Circuit Provides The Controlling Standard Because
            This Declaratory Judgment Action Is Necessarily Tied To U.S.
            Patent Infringement Claims. ................................................................. 3

      B.    The Interpretation And Analysis Of Non-U.S. Patents Falls Within
            The Federal Circuit's "Relating To Patents" Jurisdiction........................ 5

II.   UNDER EITHER THE THIRD CIRCUIT OR FEDERAL CIRCUIT
      STANDARD, NUTRASWEET HAS FAILED TO ESTABLISH AN
      ACTUAL CONTROVERSY AS REQUIRED BY 28 U.S.C. § 2201. ................ 6

      A.    The Contemporaneous Written Record Of The Negotiations
            Leading Up To The 2002 Letter Agreement Evidences
            Ajinomoto's Commitment To Amicable Dispute Resolution With
            NutraSweet.......................................................................................... 9

      B.    The Undisputed Facts Show That Ajinomoto Agreed To Negotiate
            With NutraSweet Concerning The Possible Sale Of Korean-
            Manufactured Aspartame By NutraSweet In Europe. ........................... 12

      C.    NutraSweet's Request For An Assurance After The Filing Of This
            Declaratory Judgment Action Is Not Relevant To The Actual
            Controversy Inquiry. .......................................................................... 14

      D.    NutraSweet's Reliance On Other "Currently-Pending Litigation"
            Between Ajinomoto And NutraSweet Is Misleading, Wholly
            Irrelevant, And Not Dispositive Of The Issue At Hand......................... 17

III.  EVEN IF THERE WERE JURISDICTION, THE COURT SHOULD
      EXERCISE ITS DISCRETION TO DECLINE TO CONSIDER
      NUTRASWEET'S CLAIM. ....................................................................... 19

CONCLUSION.................................................................................................. 20

## TABLE OF AUTHORITIES

### CASES

*Aetna Life Ins. Co. v. Haworth,*
    300 U.S. 227 (1937)...............................................................................17

*Akzona Inc. v. E.I. du Pont de Nemours & Co.,*
    662 F. Supp. 603 (D. Del. 1987)..............................................................15

*Alamo Refining Co. v. Shell Development Co.,*
    99 F. Supp. 790 (D. Del. 1951).................................................................13

*Armstrong World Indus., Inc. v. Adams,*
    961 F.2d 405 (3d Cir. 1992) .......................................................................7

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,*
    846 F.2d 731 (Fed. Cir. 1988) ..................................................................16

*Biodex Corp. v. Loredan Biomedical, Inc.,*
    946 F.2d 850 (Fed. Cir. 1991) ....................................................................5

*BP Chems. Ltd. v. Union Carbide Corp.,*
    4 F.3d 975 (Fed. Cir. 1993) .................................................................12, 15

*Cedars-Sinai Med. Ctr. v. Watkins,*
    11 F.3d 1573 (Fed. Cir. 1993) ....................................................................3

*Christianson v. Colt Indus. Operating Corp.,*
    486 U.S. 800 (1988).................................................................................2, 5

*Davox Corp. v. Digital Sys. Int'l, Inc.,*
    846 F. Supp. 144 (D. Mass. 1993)............................................................19

*Dewey & Almy Chem. Co. v. American Anode, Inc.,*
    137 F.2d 68 (3d Cir. 1943) ..........................................................................5

*DuPont Dow Elastomers, L.L.C. v. Greene Tweed of Delaware, Inc.,*
    148 F. Supp. 2d 412 (D. Del. 2001)..........................................................14

*EMC Corp. v. Norand Corp.,*
    89 F.3d 807 (Fed. Cir. 1996) ....................................................................19

*Foster v. Hallco Mfg. Co., Inc.,*
    947 F.2d 469 (Fed. Cir. 1991) ....................................................................4

*GAF Bldg. Materials Corp. v. Elk Corp. of Dallas,*
    90 F.3d 479 (Fed. Cir. 1996) ....................................................................15

ii

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.,*
  824 F.2d 953 (Fed. Cir. 1987) ...................................................................6, 18

*Grace Holdings, L.P. v. Sunshine Mining & Refining Co.,*
  901 F. Supp. 853 (D. Del. 1995)............................................................ 7, 16-17

*Grand Metropolitan PLC v. Pillsbury Co.,*
  704 F. Supp. 538 (D. Del. 1988)................................................................15

*Helfgott & Karas, P.C. v. Dickenson,*
  209 F.3d 1328 (Fed. Cir. 2000) .....................................................................5

*Indium Corp. of America v. Semi-Alloys, Inc.,*
  781 F.2d 879 (Fed. Cir. 1985) ........................................................................8

*Jervis B. Webb Co.  v. Southern Sys., Inc.,*
  742 F.2d 1388 (Fed. Cir. 1984) ....................................................................15

*Luis v. Dennis,*
  751 F.2d 604 (3d Cir. 1984) .........................................................................15

*Mars Inc. v. Kabushiki-Kaisha Nippon Conlux,*
  24 F.3d 1368 (Fed. Cir. 1994) .....................................................................5, 6

*Maryland Cas. Co. v. Pacific Coal & Oil Co.,*
  312 U.S. 270 (1941)........................................................................................7

*MedImmune, Inc. v. Centocor, Inc.,*
  409 F.3d 1376 (Fed. Cir. 2005) .................................................................7, 16

*Millipore Corp., v. University Patents, Inc.,*
  682 F. Supp. 227 (D. Del. 1987).................................................................15

*Minnesota Mining & Mfg. Co. v. Norton Co.,*
  929 F.2d 670 (Fed. Cir. 1991) ...................................................................6, 19

*Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,*
  57 F.3d 1051 (Fed. Cir. 1995) ..........................................................11-12, 14

*Polaroid Corp. v. Berkey Photo, Inc.,*
  425 F. Supp. 605 (D. Del. 1976)...................................................................13

*Rhone-Poulenc Specialties Chimiques v. SCM Corp.,*
  769 F.2d 1569 (Fed. Cir. 1985) .....................................................................4

*Salvation Army v. Department of Community Affairs,*
  919 F.2d 183 (3d Cir. 1990) .......................................................................6-7

*Simms v. Exeter Architectural Prods., Inc.,*
  868 F. Supp. 677 (M.D. Pa. 1994) ....................................................................13

*Solid State Equipment Corp. v. Verteq, Inc.,*
  No. 01-4423, 2003 WL 21654705 (E.D. Pa. Jan. 26, 2003) ...............................12

*Step-Saver Data Sys., Inc. v. Wyse Tech.,*
  912 F.2d 643 (3d Cir. 1990) ......................................................................6, 7, 17

*Symbol Techs., Inc. v. Hand Held Prod., Inc.,*
  No. 03-102-SLR, 2003 WL 22750145 (D. Del. Nov. 14, 2003) .........................16

*TorPharm, Inc. v. Pfizer, Inc.,*
  No. 03-990-SLR, 2004 U.S. Dist. LEXIS 11930 (D. Del. Jun. 28, 2004), *vacated
  as moot sub nom Apotex Inc. v. Pfizer Inc.,* No. 04-1463, 2005 U.S. App.
  LEXIS 5930 (Fed. Cir. Apr. 11, 2005) (per curiam) ...............................8, 13, 18

*U.S. Valves, Inc. v. Dray,*
  190 F.3d 811 (7th Cir. 1999) .............................................................................4

*U.S. Valves, Inc. v. Dray,*
  212 F.3d 1368 (Fed. Cir. 2000) .....................................................................2-3, 4

*Zimmerman v. HBO Affiliate Group,*
  834 F.2d 1163 (3d Cir. 1987) ...........................................................................14

## STATUTES

35 U.S.C. § 135 ............................................................................................................19

28 U.S.C. § 1295 .....................................................................................................2, 3, 5

28 U.S.C. § 1338 .....................................................................................................2, 3, 4

28 U.S.C. § 2201 ............................................................................................................6

## LEGISLATION

Federal Courts Improvement Act of 1982,
  Pub. L. No. 97-164, Title I, 96 Stat. 25 (1982) ..................................................5

## INTRODUCTION

Defendant Ajinomoto Co., Inc. ("Ajinomoto") hereby respectfully submits this reply memorandum of law in support of its motion to dismiss the Complaint for Declaratory Judgment pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and in response to the opposition thereto filed by the NutraSweet Company ("NutraSweet").

In a misconceived effort to salvage its deficient request for declaratory judgment, NutraSweet's opposition brief attempts to depict controversy where none has been shown to exist. Once the hyperbole and extraneous material are separated out, three dispositive facts remain uncontroverted: (1) the parties and predecessors have had a 35-year history of working together with respect to aspartame, and during that entire period Ajinomoto has never resorted to litigation to resolve disputes between them; (2) Ajinomoto agreed to NutraSweet's request to negotiate over the sale of Korean-manufactured aspartame in Europe, but since November 2004 and until the filing of the Complaint, NutraSweet made no effort to engage Ajinomoto on the issue or to pursue it further with Ajinomoto in any other way; and (3) in NutraSweet's own words, the parties "have always been able to resolve their differences and maintain the good relationship that exists" without termination of the License Agreement or resort to suit. (*See* Hoster Decl. D.I. 11 Exs. H and I.) These facts, under either the Federal Circuit or Third Circuit standards, do not support a finding of an actual controversy and thus the Complaint should be dismissed.

NutraSweet seeks to avoid the natural and logical consequence of these uncontroverted facts by engaging in a heated but pointless debate about which appellate court would have jurisdiction of an appeal in this case, and by recasting the facts concerning the negotiation of the 2002 Letter Agreement. Although Ajinomoto properly invoked Federal Circuit law in support of its motion to dismiss, NutraSweet's Complaint would fare no better if measured against the law of the Third Circuit, which is substantially similar in this respect.

As to the 2002 Letter Agreement, it is odd that NutraSweet would rely on it as an example of controversy, since its Complaint expressly invokes its terms and seeks to enforce them. NutraSweet voluntarily agreed to the terms of that agreement.  Surely it does not expect this Court to reach back and decide whether the terms were the best NutraSweet could have negotiated or whether Ajinomoto was correct that NutraSweet violated the License Agreement by directly soliciting and actively participating in filling orders for U.S.-manufactured aspartame in the Excluded Territory.  The important point for present purposes is that, despite evidence of such a serious violation from Ajinomoto's perspective in late 2001, it did not resort to termination of the License Agreement or to litigation under it, but instead sought and succeeded in reaching a negotiated resolution with NutraSweet, which the latter consistently praised as being pursued in good faith and by amicable means.  In such circumstances, NutraSweet can have no reasonable apprehension of legal action by Ajinomoto, and this Court lacks jurisdiction.

## ARGUMENT

I.   **FEDERAL CIRCUIT PRECEDENT PROVIDES THE RELEVANT STANDARD TO BE APPLIED IN DECIDING THIS MOTION.**

NutraSweet's opposition brief erroneously argues that Third Circuit precedent provides the relevant standard to be applied in deciding Ajinomoto's motion to dismiss. (Plaintiff's Answering Brief in Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n Br. D.I. 10") at 12-14.)  As NutraSweet duly acknowledges, however, the Federal Circuit has exclusive jurisdiction over all cases "arising under any Act of Congress relating to patents." 28 U.S.C. §§ 1295, 1338(a).  (Pl.'s Opp'n Br. D.I. 10 at 12.)  Where patent law is a necessary element of an action based on contract claims, the action falls within this patent-related area of Federal Circuit jurisdiction. *See U.S. Valves, Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988), as

setting a "lenient standard for jurisdiction under 28 U.S.C. § 1338" and asserting jurisdiction over a breach of contract action relating to a patent licensing agreement). Accordingly, Federal Circuit precedent governs this action, which seeks a declaratory judgment that NutraSweet is not breaching a patent licensing agreement.

A. **The Federal Circuit Provides The Controlling Standard Because This Declaratory Judgment Action Is Necessarily Tied To U.S. Patent Infringement Claims.**

To determine appellate jurisdiction in this declaratory judgment context, the Court must assess the future legal action that NutraSweet contends Ajinomoto might bring, not simply the complaint NutraSweet has filed. *See, e.g., Cedars-Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1578 (Fed. Cir. 1993) (in determining jurisdiction under 28 U.S.C. § 1338(a), the Federal Circuit applies well-pleaded complaint rule not to declaratory judgment action complaint, but to hypothetical action that declaratory judgment defendant would otherwise have brought directly against plaintiff). Thus, in determining whether section 1338(a) is satisfied, the failure of a complaint to reference that section is not dispositive. *See id.* at 1577. Here, NutraSweet alleges that it needs a declaratory judgment because it has a "reasonable apprehension" that otherwise Ajinomoto will terminate the License Agreement, (Compl. D.I. 1 ¶¶ 32-33), and that Ajinomoto could then sue for patent infringement if NutraSweet were to continue to manufacture aspartame at its Augusta, Georgia facility after it loses its license. (Pl.'s Opp'n Br. D.I. 10 at 4; DeFer Decl. D.I. 13 ¶ 4.) That is, under NutraSweet's scenario—the basis for its claims in this action—the possible breach of the License Agreement at issue here would lead to an infringement of U.S. patents. Any resulting action by Ajinomoto would thus arise under § 1338, which by virtue of 28 U.S.C. § 1295 would come under the jurisdiction of the Federal Circuit.

Federal Circuit precedent is clear in asserting jurisdiction over actions intertwined with—but not directly sounding in—patent law.  For example, in *U.S. Valves, Inc.*, the exclusive licensee sued the licensor when the latter began manufacturing and selling valves with the patented technology that was the basis for the licensing agreement.  *See U.S. Valves, Inc.*, 212 F.3d at 1370-72.  The Federal Circuit assumed jurisdiction over the appeal because plaintiff, to prevail, had to show that the valves defendant manufactured were covered by the licensed patent.  *See id.* at 1372 (noting that it reached the same conclusion as did the Seventh Circuit in transferring the case to the Federal Circuit, *U.S. Valves, Inc. v. Dray*, 190 F.3d 811, 814 (7th Cir. 1999)).

The Federal Circuit also asserted jurisdiction over the appeal of a case where the licensee brought a declaratory judgment action against the licensor seeking a declaration of non-infringement and invalidity of certain patents that had been licensed to him in a consent agreement.  *See Foster v. Hallco Mfg. Co.,* 947 F.2d 469, 471-72 (Fed. Cir. 1991).  The court held the case arose under § 1338, even though "[the licensor] had not terminated the license agreement at the time [the licensee] brought the declaratory judgment action."  *Id.* at 473 n.3; *see also Rhone-Poulenc Specialties Chimiques v. SCM Corp.*, 769 F.2d 1569, 1572-73 (Fed. Cir. 1985) (accepting jurisdiction in action relating to scope of license agreement, ultimately dismissing case in favor of arbitration).

Similarly, NutraSweet brings an action seeking a declaration that it is not in breach of a licensing agreement relating to patents—U.S. patents predominant among them.  As NutraSweet's own Complaint states, the basis for filing this action is the alleged "reasonable apprehension" that Ajinomoto "will attempt to take harmful action as a result of NutraSweet's delivery of Aspartame to the European Customer, including without limitation giving notice of termination under section 6.2 of the License Agreement," thus endangering NutraSweet's use of Ajinomoto's U.S. patents.  (Compl. D.I. 1 ¶ 33; Pl.'s Opp'n Br. D.I. 10

4

at 4; DeFer Decl. D.I. 13 ¶ 4.)   Whether NutraSweet has a right to relief thus involves a

"substantial question of federal patent law," *Christianson*, 486 U.S. at 808-09, which

implicates Federal Circuit jurisprudence. *See Helfgott & Karas, P.C. v. Dickenson*, 209 F.3d

1328, 1333 (Fed. Cir. 2000) (holding Federal Circuit jurisdiction turns on "whether the

claims arise (at least in part) under the patent laws").[1]

> **B.**    **The Interpretation And Analysis Of Non-U.S. Patents Falls Within The Federal Circuit's "Relating To Patents" Jurisdiction.**

If the case were not dismissed and the Court were then required to evaluate

Korean patents in relation to the Daesang Process or European patents in relation to imports

from Korea to Europe, such analysis also lends itself to the Federal Circuit's jurisdiction.

NutraSweet's own authorities belie its argument to the contrary.

In *Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368, 1371 (Fed.

Cir. 1994) (cited in Pl.'s Opp'n Br. D.I. 10 at 14), the Federal Circuit held that it had

exclusive jurisdiction to review the district court's dismissal of a claim relating to a Japanese

patent because such an exercise "necessarily requires consideration of facts and resolution of

legal principles that 'bear[] an essential relationship to matters committed to our exclusive

control.'"  *Id.*  (quoting *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 858-59

(Fed. Cir. 1991)).  The court declined to defer to the regional circuit where "an issue involves

---

[1]    Both the structure and wording of the Complaint echo and anticipate the application of the Federal Circuit's two-prong "reasonable apprehension" and "present activity" standard. (Compl. D.I. 1 ¶¶ 32-33.)  Similarly, NutraSweet repeatedly cites Federal Circuit cases or district court patent-related cases to make substantive points, and not in the context of discussing jurisdiction or why Ajinomoto's motion should be denied even under the Federal Circuit's standard (an argument to which NutraSweet devotes but one footnote and no citations). (*See, e.g.,* Pl.'s Opp'n Br. D.I. 10 at 11, 12, 18.) NutraSweet's citation to so many Federal Circuit cases (and only five Third Circuit cases) and patent-related cases in this context at a minimum acknowledges that such Federal Circuit and patent infringement precedents are analogous to the current situation, relevant, and persuasive.  Moreover, one of the five Third Circuit cases NutraSweet relies on, *Dewey & Almy Chem. Co. v. American Anode, Inc.*, 137 F.2d 68 (3d Cir. 1943), was a patent infringement case decided nearly four decades before the Federal Circuit was created with the enactment of 28 U.S.C. § 1295. Federal Courts Improvement Act of 1982, Pub. L. No. 97-164, Title I, 96 Stat. 25 (1982).

substantive questions coming exclusively within our jurisdiction... the disposition of which would have a 'direct bearing on the outcome.'" *Id.* (citations omitted).

While sustaining its own *appellate* jurisdiction, the *Mars* court stated that the district court lacked *subject matter* jurisdiction over the Japanese patent infringement claim because it did not form part of the same case or controversy as the U.S. patent infringement claim and did not otherwise qualify for federal jurisdiction in its own right. *Id.* at 1373-75. Although related to jurisdiction over a foreign patent claim, the Federal Circuit found that the issue was "of importance to the development of patent law and is clearly a matter that falls within the exclusive subject matter responsibility of this court." *Id.* at 1371 (quoting *Minnesota Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 672 (Fed. Cir. 1991)).[2] In short, *Mars* does not support the proposition for which NutraSweet cites it—that claims involving foreign patents fall under the purview of regional circuits, (Pl.'s Opp'n Br. D.I. 10 at 14)— but instead backs Ajinomoto's contention that the Federal Circuit standard should apply.

## II.    UNDER EITHER THE THIRD CIRCUIT OR FEDERAL CIRCUIT STANDARD, NUTRASWEET HAS FAILED TO ESTABLISH AN ACTUAL CONTROVERSY AS REQUIRED BY 28 U.S.C. § 2201.

As NutraSweet recognizes, Third Circuit precedent sets forth a three part test for determining whether an actual controversy exists for purposes of a declaratory judgment action: (1) the adversity of the parties' interests; (2) the conclusiveness of the judgment; and (3) the utility of the judgment. *See Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990) (dismissing declaratory judgment action for lack of actual controversy). The adversity-of-interests prong of the test requires a showing of a "real and immediate" threat of future harm. *See Salvation Army v. Department of Comty. Affairs*, 919 F.2d 183,

---

[2]    In *Minnesota Mining*, the Federal Circuit assumed jurisdiction over a case that was interrelated with *separate* parallel patent litigation. 929 F.2d at 672 (citing *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 954, n.3 (Fed. Cir. 1987)). Under this reasoning, it does not matter whether the other patent litigation relates to foreign or domestic patent law; the question is whether U.S. patents are at all tied into the case at bar.

192 (3d Cir. 1990); *see also Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 411 (3d

Cir. 1992); *Grace Holdings, L.P. v. Sunshine Mining & Ref. Co.,* 901 F. Supp. 853, 859 (D.

Del. 1995). Specifically, plaintiff must still "demonstrate that the probability of the future

event occurring is real and substantial [and] 'of sufficient immediacy and reality to warrant

the issuance of a declaratory judgment'." (quoting *Armstrong World*, 961 F.2d at 411).

Notably, both the Federal Circuit and Third Circuit criteria for establishing an "actual

controversy" derive from (and precedent from both Circuits repeatedly quote) the very same

Supreme Court statement in *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273

(1941): "[T]he question in each case is whether the facts alleged, under all the circumstances,

show that there is a substantial controversy, between parties having adverse legal interests, of

sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Compare,*

*e.g., Step-Saver*, 912 F.2d at 647 (quoting *Maryland Cas.*) *with MedImmune, Inc. v. Centocor,*

*Inc.*, 409 F.3d 1376, 1379 (Fed. Cir. 2005) (quoting same). Thus, although different phrasing is

used, the ultimate substantive requirement of the two tests is quite similar.

       Whether this Court applies the Third Circuit's standard or the Federal

Circuit's "reasonable apprehension" standard, neither the facts alleged in the Complaint nor

the new allegations asserted in NutraSweet's opposition brief support a finding of an actual

controversy, and the Court should dismiss the action for lack of subject matter jurisdiction.

NutraSweet has essentially abandoned the lone allegation in support of an "actual

controversy" contained in the Complaint—that relating to the litigation between Ajinomoto

and Daesang Corporation. (Compl. D.I. 1 at ¶¶ 23-24, 31.)[3] In its opposition brief, the

---

[3]    The Daesang litigation does not support a reasonable apprehension or threat of immediate and
real future harm to NutraSweet for the reasons set forth in Ajinomoto's opening brief.
(Memorandum of Law in Support of Defendant Ajinomoto Co., Inc.'s Motion to Dismiss ("Def.'s
Mem. Supp. Mot. Dismiss D.I. 7") at 15-19.) NutraSweet's opposition brief attempts in vain to
distinguish the litigation between Ajinomoto and Daesang from precedent rejecting similar facts
as not supporting the existence of an actual controversy. (Pl.'s Opp'n Br. D.I. 10 at 19-22.) After

Daesang litigation does not rank among the three "primary" grounds set forth to support a finding of actual controversy, (Pl.'s Opp'n Br. D.I. 10 at 16, 19), all of which were alleged for the first time in the brief: (1) Ajinomoto's issuance of a notice of breach in 2002 in conjunction with NutraSweet's violation of the License Agreement and discussions leading to the 2002 Letter Agreement; (2) Ajinomoto's alleged statement during the 2004 supply agreement negotiations that NutraSweet required a license to sell aspartame in Europe; and (3) Ajinomoto's supposed failure to respond to NutraSweet's requests for assurances that it will not terminate the License Agreement. (Pl.'s Opp'n Br. D.I. 10 at 16-19.) NutraSweet also alleges as relevant other "currently-pending litigation" between NutraSweet and Ajinomoto relating to distinct inventions and technology from that at issue in the instant case. (Pl.'s Opp'n Br. D.I. 10 at 10, 22.) When analyzed under either the Federal Circuit or Third Circuit criteria, each of these new arguments fails to satisfy the actual controversy requirement as explained in detail below.

---

sifting through NutraSweet's various assertions, the following facts remain undisputed: (1) each of the three Daesang litigations were commenced over four years ago; (2) Daesang was a third party, unrelated to NutraSweet, while the three litigations were pending; and (3) all litigation with Daesang ended over two years ago. (Pl.'s Opp'n Br. D.I. 10 at 19-20). Thus, the litigation between Daesang and Ajinomoto cannot serve as a basis for finding a real and immediate threat of harm to NutraSweet. *See, e.g., TorPharm, Inc. v. Pfizer, Inc.,* No. 03-990-SLR, 2004 U.S. Dist. LEXIS 11930, at *34-38 (D. Del. Jun. 28, 2004), *vacated as moot sub nom Apotex Inc. v. Pfizer Inc.,* No. 04-1463, U.S. App. LEXIS 5930 (Fed. Cir. Apr. 11, 2005) (per curiam) (attached to Def.'s Mem. Supp. Mot. Dismiss as Ex. A); *Indium Corp. of Am. v. Semi-Alloys, Inc.,* 781 F.2d 879, 883 (Fed. Cir. 1985). What's more, if the Daesang litigation were as portentous of litigation by Ajinomoto as NutraSweet would have the Court believe, and indeed if the experience in 2002 was as threatening as NutraSweet now contends, NutraSweet has not explained why it waited more than two years after it acquired the Daesang assets before initiating this declaratory judgment action. NutraSweet does not allege that *Ajinomoto* has taken any action since then that has added any threat.

**A.    The Contemporaneous Written Record Of The Negotiations Leading Up To The 2002 Letter Agreement Evidences Ajinomoto's Commitment To Amicable Dispute Resolution With NutraSweet.**

NutraSweet's after-the fact attempt to recharacterize the nature of the negotiations that led to the 2002 Letter Agreement and relationship with Ajinomoto as "contentious" and "threatening" (Pl.'s Opp'n Br. D.I. 10 at 1, 5, 16.), rings particularly hollow in light of the written record and cannot satisfy NutraSweet's burden of establishing an actual controversy.  No matter what adjective NutraSweet now chooses to describe those negotiations, the undisputed fact remains that Ajinomoto engaged NutraSweet in business discussions and reached a commercial solution to the dispute without resort to litigation or termination of the License Agreement.

The 2002 Letter Agreement negotiations related to NutraSweet's participation in and facilitation of the indirect sale of aspartame in Europe and elsewhere in the Excluded Territory.  (Declaration of Joshua H. Rawson ("Rawson Decl."), filed herewith, ¶ 2; Tomioka Decl. D.I. 8 ¶¶ 6-8.)  Although NutraSweet now contends that its conduct did not violate the License Agreement, Ajinomoto respectfully disagrees.   As detailed in the Rawson Declaration, Ajinomoto obtained evidence that NutraSweet was shipping product to Europe directly from its manufacturing facilities in Georgia, whose technology was the subject of the License Agreement, and was actively soliciting customers in the Excluded Territory for such shipments, despite the prohibition of the License Agreement on exporting to Europe.  (Rawson Decl. ¶¶ 8-13.)  In so stating, Ajinomoto does not expect the Court to resolve whether there was a breach in 2001-2002, nor can NutraSweet reasonably expect the Court to do so on the way to deciding whether there is an actual controversy now.

The relevant fact, however, is that Ajinomoto considered NutraSweet's conduct to be a clear and serious violation of the License Agreement, and NutraSweet

9

acknowledged Ajinomoto's concerns to be genuine and worthy of serious consideration. (*See* Rawson Decl. ¶ 33; Bowman Letter to Kono dated 2/28/02, Hoster Decl. D.I. 11 Ex. H.) Moreover, notwithstanding the strong evidence of NutraSweet's knowing participation in these exports, and the seriousness of this violation, NutraSweet acknowledges that the first step Ajinomoto took was to request a meeting to discuss the apparent violations.  (Pl.'s Opp'n Br. D.I. 10 at 5; Hoster Decl. D.I. 11 ¶ 4 and Ex. B.)  Ajinomoto conducted extensive discussions with NutraSweet before it decided to issue a notice of breach (which gave NutraSweet 60 days to cure the conduct prior to any termination of the License Agreement). (Rawson Decl. ¶¶ 16, 33.)  The Hoster Declaration acknowledges that after issuance of the notice of breach, Ajinomoto continued to engage in discussions to resolve the dispute. (Hoster Decl. D.I. 11 ¶ 16.)   All of these subsequent discussions and communications between Ajinomoto and NutraSweet were amicable and in the spirit of cooperation.  (Rawson Decl. ¶¶ 5, 17, 33.)   Contrary to NutraSweet's assertions, at no time did Mr. Rawson, or anyone else from Ajinomoto, threaten to bring a patent infringement suit against NutraSweet. (*Id.* ¶ 17.)

As demonstrated by the correspondence attached to the Hoster Declaration, throughout the relevant time period NutraSweet agreed with Ajinomoto's description of the negotiations as "amicable," repeatedly praised the cooperative relationship between the parties, and never contended that it was being threatened or coerced.  *See* Bowman Letter to Kono dated 12/13/01, Hoster Decl. D.I. 11 Ex. E ("in the spirit of maintaining our good relationship with Ajinomoto"); Bowman Letter to Kono dated 1/11/02, Hoster Decl. D.I. 11 Ex. F ("In the spirit of maintaining the good relationship between our companies, and if Ajinomoto still has any concerns about the documents in question, The NutraSweet Company will agree to meet with you and your representatives to discuss the matter, and if necessary, possible amicable resolutions."); Bowman Letter to Kono dated 2/28/02, Hoster Decl. D.I. 11

Ex. H ("Rather than see this matter escalate to a level where Ajinomoto formally provides a notice of breach under the Release And License Agreement, NutraSweet would like to continue the good faith efforts of the parties to amicably resolve the differences that exist" and "NutraSweet and Ajinomoto have always been able to resolve their differences and maintain the good relationship that exists."); Bowman Letter to Kono dated 3/27/02, Hoster Decl. D.I. 11 Ex. I ("As stated in my letter, NutraSweet and Ajinomoto have always been able to resolve their differences and maintain the good relationship that exists. It is our belief that we will be able to do so again with respect to this matter."); *see also* Bowman Letter to Rawson dated 4/10/02, attached to Rawson Decl. as Ex. G ("NSC is encouraged by and appreciates the continued efforts of Ajinomoto to resolve the dispute.") In fact, an April 15, 2002 letter from Mr. Hoster stated "NutraSweet Company appreciates Ajinomoto's continued efforts to resolve this dispute." (Rawson Decl. ¶ 30, Ex. H.) NutraSweet's counsel reiterated these exact same sentiments in numerous oral communications with Ajinomoto's counsel. (Rawson Decl. ¶¶ 17, 19, 32.)[4]

The extensive communications between the parties on this issue illustrates Ajinomoto's commitment to amicable resolution of the dispute. Thus, the 2002 Letter Agreement negotiations cannot serve as a basis for finding that there exists an immediate and real threat that Ajinomoto will terminate the License Agreement under the current circumstances – in fact, just the opposite is true. *See, e.g., Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053-54 (Fed. Cir. 1995) (affirming dismissal of declaratory judgment action for lack of actual controversy where there were ongoing license negotiations between the parties and finding that a patentee's attempt to conduct license

---

[4]    NutraSweet attempts to downplay the multiple side agreements reached concerning the sale of encapsulated aspartame in the Excluded Territory, (Pl.'s Opp'n Br. D.I. 10 at 9-10, 23), but it does not and cannot dispute that these agreements to modify the License Agreement were also reached amicably.

negotiations is a commercial activity, not a threat of suit, and therefore could not create a justiciable controversy); *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 980 (Fed. Cir. 1993) (taking into account fact that defendants "repeatedly expressed their desire to resolve amicably any problems that might arise" in discussions with plaintiffs as well as potential licensees to conclude that plaintiff lacked a reasonable apprehension of suit); *Solid State Equip. Corp. v. Verteq, Inc.*, No. 01-4423, 2003 WL 21654705, *4 (E.D. Pa. Jan. 26, 2003) (holding actual controversy requirement not satisfied where defendant brought the existence of a patent to plaintiff's attention and then expressly sought an amicable, or commercial, resolution of the inquiry and stating that "[t]his effort to resolve differences without litigation is appropriate within the competitive marketplace of American business."). (Exhibit A hereto).

**B.     The Undisputed Facts Show That Ajinomoto Agreed To Negotiate With NutraSweet Concerning The Possible Sale Of Korean-Manufactured Aspartame By NutraSweet In Europe.**

NutraSweet next attempts to satisfy the adversity-of-interests prong through its new allegations relating to the negotiations over the proposed supply agreement in 2004. The parties' accounts of what transpired with respect to NutraSweet's possible sale of Korean-manufactured aspartame in Europe differ in certain respects. (*Compare* Tomioka Decl. D.I. 8 ¶ 21 *with* DeFer Decl. D.I. 13 ¶ 8.) In particular, NutraSweet alleges that as part of the supply agreement negotiations it "sought Ajinomoto's assurance that Ajinomoto would not terminate the License Agreement or take any other adverse action under the License Agreement" based upon the export to Europe of aspartame manufactured using the Daesang Process. (Pl.'s Opp'n Br. D.I. 10 at 8; DeFer Decl. D.I. 13 ¶ 8.) However, as detailed in Mr. Tomioka's declaration, the issue raised by NutraSweet was not in the context of the License Agreement or the 2002 Letter Agreement but instead related to whether Ajinomoto would agree not to assert claims with respect to such exports under its European patents,

which are not licensed under the License Agreement. (Tomioka Decl. D.I. 8 ¶ 21; *see also* Def.'s Mem. Supp. Mot. Dismiss D.I. 7 at 7-9.)

        Even if the court were to accept as true NutraSweet's account of the facts regarding its supposed request for assurances or Ajinomoto's alleged response that NutraSweet should obtain a license to export Daesang-manufactured aspartame to Europe, this still would not satisfy the actual controversy requirement. Indeed, "a patent owner should not be dragged into court when it has not engaged in threatening or aggressive acts simply because it chooses to inform potential infringers of its patent rights." *TorPharm, Inc.*, 2004 U.S. Dist. LEXIS 11930 at * 29; *see also Simms v. Exeter Architectural Prods., Inc.* 868 F. Supp. 677, 684 (M.D. Pa. 1994) (finding no real and immediate threat of harm based on termination letter reminding plaintiff of contractual non-compete obligation in action seeking declaration of rights relating to non-compete clause in employment contract); *Polaroid Corp. v. Berkey Photo, Inc.*, 425 F. Supp. 605, 607 (D. Del. 1976) (holding no actual controversy where there was no express "charge of infringement, but only the ever ready vigilance of [defendant] to protect its mark should it be used by a competitor"); *Alamo Refining Co. v. Shell Development Co.*, 99 F. Supp. 790, 795 (D. Del. 1951) (holding that an offer of a license is not sufficient to establish an actual controversy, absent a charge of infringement or a threat of suit). Even NutraSweet's recitation of the facts is anything but threatening or aggressive.

        What is dispositive for purposes of Ajinomoto's motion to dismiss are the facts relating to these negotiations that NutraSweet has not disputed. As NutraSweet agrees, Ajinomoto asked about purchasing some product to fill a supply shortage. (Pl.'s Opp'n Br. D.I. 10 at 7; DeFer Decl. D.I. 13 ¶ 8.) In response, ***NutraSweet*** raised the wholly unrelated issue of its potential sale of Korean-manufactured aspartame in Europe. (Pl.'s Opp'n Br. D.I. 10 at 7-8; DeFer Decl. D.I. 13 ¶ 8; Tomioka Decl. D.I. 8 ¶ 21.) Moreover, NutraSweet does

not dispute that Ajinomoto agreed to negotiate with NutraSweet regarding this issue as long as the discussions were separated from the distinct supply contract issue, that NutraSweet's Board agreed to negotiate the issues separately, and that NutraSweet then failed to pursue the matter with Ajinomoto on any terms at all until NutraSweet filed this declaratory judgment suit six months later. (Pl.'s Opp'n Br. D.I. 10 at 8; Tomioka Decl. D.I. 8 ¶¶ 21-24.) The lack of any evidence in the record contradicting these facts precludes a finding of "a real and immediate threat of harm" to NutraSweet. *See Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1170 (3d Cir. 1987) (finding it was "purely a matter of conjecture" whether defendants had threatened to sue on theory on which plaintiff requested relief and therefore dispute lacked "the immediacy and reality necessary to require a judicial declaration of rights as between the parties"); *see also Phillips Plastics*, 57 F.3d at 1053-54 (dismissing action for lack of actual controversy where parties were engaged in license negotiations and plaintiff never advised defendant that negotiations had broken down and instead filed suit); *DuPont Dow Elastomers, L.L.C. v. Greene Tweed of Delaware, Inc.*, 148 F. Supp. 2d 412, 415 (D. Del. 2001) ("When there are proposed or ongoing license negotiations, a litigation controversy normally does not arise until the negotiations have broken down.") (quoting *Phillips Plastics*, 57 F.3d at 1053).

      **C.**      **NutraSweet's Request For An Assurance After The Filing Of This Declaratory Judgment Action Is Not Relevant To The Actual Controversy Inquiry.**

      NutraSweet next attempts improperly to rely on its own post-litigation conduct to try to bolster its claim—specifically, its counsel's purported request for an assurance that Ajinomoto would not terminate the License Agreement, which request was made after the filing of the Complaint and after learning the basis of Ajinomoto's intended

motion to dismiss. (Pl.'s Opp'n Br. D.I. 10 at 18-19.) This request is nothing more than litigation posturing and is neither relevant to nor dispositive of the actual controversy issue.[5]

It is well established that "[a]ctivities that occurred subsequent to the filing of the Complaint may not be considered since jurisdiction, if it exists, must be established as of the date of the filing of the declaratory judgment action." *See Millipore Corp. v. University Patents, Inc.*, 682 F. Supp. 227, 231 (D. Del. 1987) (citing *Jervis B. Webb Co. v. Southern Sys., Inc.*, 742 F.2d 1388, 1398 (Fed. Cir. 1984)); *see also GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996) ("[L]ater events may not create jurisdiction where none existed at the time of filing.") (citation omitted); *BP Chems. Ltd.*, 4 F.3d at 980 (finding no reasonable apprehension of suit despite defendant's refusal to promise at motion to dismiss hearing that it would not enforce the patent at issue against plaintiff's licensees and noting defendants' repeatedly expressed desire in discussions with plaintiff to resolve amicably any problems that might arise); *Luis v. Dennis*, 751 F.2d 604, 608 (3d Cir. 1984) ("Viewing the matter, as we must, at the time the complaint was filed, we believe that the requisite immediacy and reality are lacking in this case."); *Grand Metropolitan PLC v. Pillsbury Co.*, 704 F. Supp. 538, 540 (D. Del. 1988) ("The case or controversy must have existed at the time the complaint was filed.") (citing *Luis v. Dennis*, 751 F.2d at 608); *Akzona Inc. v. E.I. du Pont de Nemours & Co.*, 662 F. Supp. 603, 610 (D. Del. 1987) ("As in all other litigation, the case or controversy must exist as of the date of the filing of the complaint.") (citations omitted).

---

[5]    Like the Complaint, NutraSweet's counsel's letter referred only to the Daesang litigation as the basis for alleging an actual controversy, not any of the other allegations now relied upon as NutraSweet's "primary" grounds for jurisdiction. (*See* Wentzel Letter to Slater dated 6/13/05, attached to Wentzel Decl. D.I. 12 as Ex. A; *see also* Pl.'s Opp'n Br. D.I. 10 at 16, 19; *supra* pp. 7-8.)

Indeed, in *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734 n.2 (Fed. Cir. 1988), a case cited favorably by NutraSweet, the circuit court found that the district court had improperly considered facts that arose subsequent to the filing of the declaratory judgment action in assessing a motion to dismiss for lack of actual controversy. There, the circuit court disregarded the subsequent letter in its analysis because "[t]he presence or absence of jurisdiction must be determined on the facts existing at the time the complaint under consideration was filed." *Id.* at 734 n.2 (citation omitted). Similarly, in *MedImmune*, 409 F.3d at 1382, the court dismissed a declaratory judgment action for lack of actual controversy despite the fact that defendant sued plaintiff for patent infringement after plaintiff filed its declaratory judgment action. The court reasoned that the presence or absence of a case or controversy is based on facts as they exist at the time the complaint was filed. *Id.* Accordingly, NutraSweet's post-filing request for assurances is not relevant to whether there was an actual controversy that could support jurisdiction when the Complaint was filed.[6]

Even such assurances requested ***before*** the filing of a complaint would not be dispositive. For example, in *Grace Holdings*, a case relied upon by NutraSweet, the court found no actual controversy to support a declaratory judgment claim in the absence of some overt conduct indicating an intent by defendant to violate the contract at issue. *See Grace*

---

[6]     In *Symbol Technologies*, the main case NutraSweet relies upon for this point, the assurance at issue was whether the defendant would sue the plaintiff, which has never been at issue or discussed in this case. In that context, moreover, this Court noted that it "[was] not entirely comfortable with the notion that a plaintiff might bring a declaratory judgment against a defendant for the purpose of forcing an admission of the defendant's intent to enforce its patent rights." *Symbol Techs., Inc. v. Hand Held Prods., Inc.*, No. 03-102-SLR, 2003 WL 22750145, at *4 n.2 (D. Del. Nov. 14, 2003) (Exhibit B hereto). This Court also expressed discomfort with the notion that a defendant would plead no reasonable apprehension of suit, but then file for infringement in another forum once the declaratory judgment action was dismissed. *Id.* As NutraSweet points out in its opposition brief, however, forum shopping is not an issue here because the forum selection clause in the License Agreement specifies that any suit brought under it must be filed in the District of Delaware. (Pl.'s Opp'n Br. D.I. 10 at 27.)

*Holdings*, 901 F. Supp. at 859-62. The court noted that plaintiff did not allege any affirmative statements, threats, or other indicia that defendant did not intend to comply with the contract terms at issue other than defendant's assertion of "no position" on the issue in response to plaintiff's request. *Id.* at 860. The court held that without some form of overt conduct on the part of defendant, plaintiff had not demonstrated that the probability of the future event it wished the court to adjudicate was "real and substantial, [and] of sufficient immediacy and reality." *Grace Holdings*, 901 F. Supp. at 860 (citations omitted); *see also Step-Saver*, 912 F.2d at 647 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). Here, Ajinomoto's non-response to NutraSweet's post-Complaint request for an assurance similarly cannot be interpreted as threatening conduct, particularly in light of its expressed willingness to negotiate the issue amicably.

**D.    NutraSweet's Reliance On Other "Currently-Pending Litigation" Between Ajinomoto And NutraSweet Is Misleading, Wholly Irrelevant, And Not Dispositive Of The Issue At Hand.**

NutraSweet's opposition brief criticizes Ajinomoto's focus on the Daesang litigations as being "devoid of any reference to currently-pending litigation and other adversarial matters between it and NutraSweet," (Pl.'s Opp'n Br. D.I. 10 at 10), yet Ajinomoto addressed only the Daesang litigation in its motion to dismiss precisely because that was the only allegation relating to "reasonable apprehension" that appeared in NutraSweet's Complaint. (Compl. D.I. 1 ¶¶ 23, 31.) Considering that NutraSweet bears the burden of proof on the latter issue, it is rather disingenuous for NutraSweet to accuse Ajinomoto of being "incomplete, inaccurate, and misleading," (Pl.'s Opp'n Br. D.I. 10 at 1), when Ajinomoto addressed the only evidence NutraSweet had adduced to support its claim.

In any event, the only other proceedings to which NutraSweet points are not related to the aspartame manufacturing process property rights or the License Agreement at

issue in this action. All three proceedings identified by NutraSweet relate to patents claiming the combined use of neotame, aspartame, and/or acesulfame-K, and are thus unrelated to the instant dispute. *See TorPharm*, 2004 U.S. Dist. LEXIS 11930 at *34-*37 (parties' on-going litigation over unrelated patents insufficient to create case or controversy enabling jurisdiction for purposes of the Declaratory Judgment Act).

NutraSweet relies on *Goodyear Tire* for the proposition that on-going litigation between the parties is sufficiently threatening to create the "reasonable apprehension" or "adversity of interests" necessary to establish an "actual controversy." (Pl.'s Opp'n Br. D.I. 10 at 22.) In addition to a history of unrelated patent litigation, however, *Goodyear Tire* involved on-going litigation in state court over the very same technology that was at issue in the federal declaratory judgment action. *See Goodyear Tire*, 824 F.2d at 956. Here, the proceedings relating to the blends of neotame, aspartame, and acesulfame K are distinct from the intellectual property rights covered by the License Agreement, and Ajinomoto has never brought any legal action against NutraSweet with respect to aspartame, (*see* Tomioka Decl. D.I. 8 ¶ 19), a fact not disputed by NutraSweet. (*See* Pl.'s Opp'n Br. D.I. 10 at 22.)

Moreover, two of the three other "proceedings" cited by NutraSweet—the USPTO Reexamination and the Australian litigation—were initiated by NutraSweet, not Ajinomoto. (Pl.'s Opp'n Br. D.I. 10 at 10; DeFer Decl. D.I. 13 ¶¶ 19-20.) Surely *NutraSweet's* litigious conduct cannot be relied upon to determine whether there exists an immediate and real threat (or reasonable apprehension) that *Ajinomoto* would bring suit or terminate the License Agreement.

The only proceeding invoked by NutraSweet that was allegedly initiated by Ajinomoto is the USPTO's interference action. (Pl.'s Opp'n Br. D.I. 10 at 10; DeFer Decl. D.I. 13 ¶ 18.) But interference proceedings—which are used to resolve the question of

priority of invention when more than one applicant seeks a patent on substantially the same invention—are *not* lawsuits. *See* 35 U.S.C. § 135; *see also Minnesota Mining*, 929 F.2d at 674. In addition, as NutraSweet's brief acknowledges, whether or not an interference is ultimately commenced is determined *by the PTO* as part of its patent review procedure and cannot be unilaterally instituted by a party. (Pl.'s Opp'n Br. D.I. 10 at 10.) Thus, NutraSweet's reliance on these three other "currently pending litigation and other adversarial matters" falls far short of satisfying its burden of a real and immediate threat of harm for purposes of the actual controversy inquiry.

## III. EVEN IF THERE WERE JURISDICTION, THE COURT SHOULD EXERCISE ITS DISCRETION TO DECLINE TO CONSIDER NUTRASWEET'S CLAIM.

NutraSweet acknowledges, as it must, that this Court has discretion to decline to exercise jurisdiction over a declaratory judgment action, discretion that does not exist in other contexts. (Pl.'s Opp'n Br. D.I. 10 at 26-27.) Moreover, as set forth in Ajinomoto's memorandum in support of its motion to dismiss, the courts have evinced a policy of dismissal when it is apparent that the party seeking declaratory relief is attempting to use the litigation as leverage in commercial negotiations. *See, e.g., EMC Corp. v. Norand Corp.*, 89 F.3d 807, 815 (Fed. Cir. 1996) (declaratory action brought to gain advantage in licensing negotiations properly dismissed pursuant to court's discretion to decline to exercise jurisdiction); *Davox Corp. v. Digital Sys. Int'l, Inc.*, 846 F. Supp. 144, 148 (D. Mass. 1993) (declining to exercise jurisdiction over a declaratory judgment action in which the plaintiff filed suit after breaking off negotiations with the patentee). The facts NutraSweet itself adduces show this is such a case.

As NutraSweet acknowledges, Ajinomoto did not raise with NutraSweet any issues pertaining to the latter's sale of Korean products in Europe. (Pl.'s Opp'n Br. D.I. 10 at

7.) Instead, Ajinomoto contacted NutraSweet about obtaining some aspartame to meet a supply shortage. (*Id.*) NutraSweet then tried to use the leverage of Ajinomoto's supply condition to obtain concessions of some sort relating to Korean product sales in Europe. (*Id.*) When Ajinomoto was able to resolve its supply needs by other means, (*see* Tomioka Decl. D.I. 8 ¶ 23.), NutraSweet apparently was dissatisfied with its bargaining position regarding the Korean sales situation. Despite Ajinomoto's stated willingness to negotiate concerning the Korean matter, NutraSweet dropped any negotiations and, six months later, instead resorted to this Court. (Tomioka Decl. D.I. 8 ¶ 24.) NutraSweet complains that any negotiations would result in Ajinomoto dictating its terms, but there is no evidence to support such a conclusion. (*See* Rawson Decl. ¶¶ 27-31.) In any case, in the absence of any threatening conduct by Ajinomoto, this Court should follow the lead of others that have left the parties to seek an amicable resolution of such disputes as may exist, rather than take up the Court's time and resources to resolve what could prove to be complex factual and legal issues pertaining to technical patent and licensing matters under the laws of several countries.

## CONCLUSION

For the foregoing reasons and those set forth in Ajinomoto's opening brief, the Court should dismiss NutraSweet's Complaint for declaratory judgment for lack of jurisdiction or as a matter of discretion.

OF COUNSEL:
CLEARY GOTTLIEB STEEN & HAMILTON LLP
Matthew D. Slater, Esquire
Patricia M. McDermott, Esquire
Ilya Shapiro, Esquire
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-1801
(202) 974-1500
mslater@cgsh.com
pmcdermott@cgsh.com
ishapiro@cgsh.com
691669v1/29191

POTTER ANDERSON & CORROON, LLP

By: _____
Peter J. Walsh, Jr. (DSB ID No. 2437)
1313 North Market Street
Post Office Box 951
Wilmington, Delaware 19899-0951
(302) 984-6037
pwalsh@potteranderson.com
*Attorneys for Defendant Ajinomoto Co., Inc.*

20

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

## CERTIFICATE OF SERVICE

I, Peter J. Walsh, Jr., do hereby certify that on July 22, 2005, I caused copies of the foregoing DEFENDANT AJINOMOTO CO., INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS to be electronically filed with the Clerk of the Court using CM/ECF, which is available for public viewing and downloading, and which will send notification of such filing to the following counsel of record:

> James L. Holzman, Esquire (DSB ID No. 663)
> Gary F. Traynor (DSB ID No. 2131)
> J. Clayton Athey (DSB ID No. 4378)
> PRICKETT, JONES & ELLIOTT, P.A.
> 1310 King Street
> Wilmington, Delaware  19801
> Email:  jlholzman@prickett.com
> Email:  gftraynor@prickett.com
> Email:  jcathey@prickett.com

> Peter J. Walsh, Jr. (DSB ID No. 2437)
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, 6th Floor
> 1313 North Market Street
> Post Office Box 951
> Wilmington, Delaware  19899-0951
> Tel:  (302) 984-6000
> E-mail:  pwalsh@potteranderson.com

691669v1/29191