# EXHIBIT A



Not Reported in F.Supp.2d                                                                 Page 1
2003 WL 21654705 (E.D.Pa.)

(Cite as: 2003 WL 21654705 (E.D.Pa.))

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
SOLID STATE EQUIPMENT CORPORATION
CIVIL ACTION, Plaintiff,
v.
VERTEQ, INC., Defendant.
**No. CIV.A. 01-4423.**

Jan. 26, 2003.

*ORDER*

DAVIS.

*1 AND NOW, this 26th day of January, 2003, upon consideration of (i) Plaintiff's Complaint for Declaratory Judgment; (ii) Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction Under the Declaratory Judgment Act; (iii) Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss of Defendant Vertaq, Inc.; and (iv) the Reply Memorandum of Defendant Vertaq, Inc., in Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction under the Declaratory Judgment Act, IT IS HEREBY ORDERED and DECREED that Defendant's Motion to Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction Under the Declaratory Judgment Act is GRANTED; Plaintiff's Complaint for Declaratory Judgment is DISMISSED; Plaintiff prayer that the Court Enjoin Defendant Vertaq from filing a patent infringement suit against Plaintiff Solid State Equipment Corporation is DENIED.

Federal Rule of Civil Procedure 12(b)(1) provides that the defense of the court's lack of jurisdiction over the subject matter may be raised by motion. A motion to dismiss under Rule 12(b)(1) succeeds only where the right claimed by the plaintiff is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Growth Horizons v. Delaware County,* 983 F.2d 1127, 1280 (3d Cir.1993)(citing *Kulick v. Pocono Downs Racing Association,* 816 F.2d 895, 899 (3d Cir.1987)). "The threshold to withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(1) is ... lower than that required to withstand a Rule 12(b)(6) motion." *Lunderstadt v. Colafella,* 885 F.2d 66, 70 (3d Cir.1989); *Blank v. Exeter School District,* 2002 U.S. Dist. Lexis 1990,1 at *4 (E.D.Pa.).

Where a question of fact underlies the resolution of the jurisdictional question, the " trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Robinson v. Dalton,* 107 F.3d 1018, 1021 (3d Cir.1997). This is so because the court's essential power to hear the case is at issue. The plaintiff bears the burden of persuasion in establishing the court's jurisdiction in a factual 12(b)(1) claim. *Gould Electronics Inc. v. United States of America,* 220 F.3d 169,178 (3d Cir.2000).

The Declaratory Judgment Act provides that "in a case of actual controversy within its jurisdiction ... any Court of the United States ... may declare the rights and other legal relations of any interested party seeking declaration, whether or not such further relief is or could be sought." 28 U.S.C. § 2201(a) (1994). The plaintiff must demonstrate that an "actual controversy" existed at the time it filed its complaint. *Aetna Life Insurance Company v. Haworth,* 300 U.S. 227, 239-41, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

In patent infringement cases, the application of a two-part test determines whether an actual controversy exists such that the exercise of jurisdiction over a declaratory judgment claim is proper. First, the defendant patentee must create a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 2
2003 WL 21654705 (E.D.Pa.)

**(Cite as: 2003 WL 21654705 (E.D.Pa.))**

*reasonable* apprehension on the part of the plaintiff that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity. *BP Chemicals Ltd. v. Union Carbide Co.,* 4 F.3d 975, 978 (Fed.Cir.1993). The genesis of this apprehension may be found in the explicit words or conduct of the defendant, or in the surrounding circumstances or history. *Id.* Second, the plaintiff must be either (1) engaged in an activity which could constitute infringement or (2) taking concrete steps towards infringing the patent with the intent to do so. *Id.*

*2 The "actual controversy test" is objective. Therefore, the subjective belief or fear of the plaintiff is insufficient to satisfy the burden of establishing, by a preponderance of the evidence, that, based solely on the defendant's conduct, the plaintiff had an objectively reasonable apprehension that it would be sued for infringement.

To determine whether an objective apprehension exists, courts first look for express charges of infringement and, if none exist, then to the "totality of the circumstances." *Shell Oil Co. v. Amoco Co.,* 970 F.2d 885 (Fed.Cir.1992). Whether considering express charges or apprehension based on the totality of the circumstances, courts apply the two-part test to the facts existing at the time the complaint is filed. [FN1] *Arrowhead v. Ecolochem,* 846 F.2d 731, 736 (Fed.Cir.1988). The purpose of this test is to determine whether there is a real and immediate need for judicial intervention. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 238-41, 57 S.Ct. 461, 81 L.Ed. 617 (1937); *BP Chemicals Ltd.,* 4 F.3d at 978 (discussing the purpose of the two-part test applied to declaratory judgment claims involving patent infringement).

> FN1. For this reason, Plaintiff Solid State's complaints that Defendant Verteq ceased all correspondence and communication upon the filing of the instant action in the United States District Court for the Eastern District of Pennsylvania are irrelevant. Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss of Defendant Verteq, Inc., page 5.

To rise to the level of an express charge that satisfies the first prong of the actual controversy test, the defendant's conduct or words must clearly indicate its intent to enforce its patent. *Arrowhead,* 846 F.2d at 736 ("If defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more."). In the absence of express charges of patent infringement, the court must examine the surrounding circumstances to determine whether a reasonable apprehension of a law suit existed. *See BP Chemicals Ltd.,* 4 F.3d at 979 ("Declaratory judgment jurisdiction does not require direct threats. Indirect threats or actions that place the declaratory plaintiff in reasonable apprehension of suit will meet the test for a declaratory judgment action.").

Plaintiff, Solid State Equipment Corporation (SSEC) and Defendant, Verteq, Inc. (Verteq) are manufacturers and suppliers of wafer cleaning applications and products for the semiconductor industry. Verteq holds U.S. Patent No. 4,804,007 (hereinafter "the 007 patent") on a particular cleaning system which uses megasonic energy. SSEC manufactures Trilennium 3301 (hereinafter "Trilennium"), a family of single-wafer cleaners and wet processors.

*3 The factual issue underlying the jurisdictional dispute is principally framed by three letters exchanged between SSEC and Verteq on May 8, 21 and 24, 2001. Whether or not Verteq, through this correspondence and subsequent telephone calls to SSEC's counsel, threatened SSEC with a patent infringement suit, or created an objectively reasonable apprehension of such a lawsuit, is the factual issue in dispute.

The relevant exchange began with Verteq's letter to SSEC dated May 8, 2001 which states:
> I am advised that your company is marketing a system for the wet processing of semiconductor wafers under the name "Trilennium 3301," which employs a transducer bonded to a quartz plate. Consequently, the above-mentioned patent may be applicable to that product, particularly Claim

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3
2003 WL 21654705 (E.D.Pa.)

**(Cite as: 2003 WL 21654705 (E.D.Pa.))**

11. If upon examination, you find that the patent is infringed by your product, we ask that you cease any manufacture, use or sale of such product. If, on the other hand, you feel that the patent is not applicable, please let us know your reasons for that so that we may amicably resolve this matter.
Complaint for Declaratory Judgment ("Complaint"), Exhibit B.

SSEC replied on May 21, 2001. SSEC's letter advanced its view that the transducer assembly and the Trilennium 301 system are substantially different from the processes employed in the Verteq system. SSEC identified several differentiating characters of its product: the Trilennium 3301 process makes no use of any tank or container in the megasonic cleaning process, and is "unique because it optimizes the megasonic energy by applying the vibrations to the sufrace of the wafer through a layer of fluid directed to the surface of the wafer." Complaint, Exhibit C. SSEC also requested that Verteq provide a copy of the '007 U.S. Patent prosecution file history in order that it might make a more comprehensive analysis of the claims.

On May 24, 2001, Verteq wrote the final letter at issue. Verteq wrote:
In sending Patent 4,804,007, I referred to Claim 11 because it, like the SSEC product, does not include a container. Thus, I would appreciate your further comment as to why you believe the claim is not applicable to the SSEC product.
Complaint, Exhibit D.

First apologizing in a letter dated June 21, 2001 for its delay in responding to Verteq's request, SSEC eventually provided a comprehensive response to Verteq's request on August 29, 2001. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, Exhibits 2 and 3. SSEC filed its complaint in this court on the same day.

The first issue before the Court is therefore whether SSEC has demonstrated sufficient evidence to support the conclusion that Verteq made an explicit threat or took other action which created a reasonable apprehension on the part of SSEC that it would face an infringement suit if it continued to market and sell the Trilennium 3301 series of products. SSEC has failed to meet its burden of establishing that the facts of record rise to the level of an actual case or controversy under the Declaratory Judgment Act.

Initially, SSEC has not alleged, and the record does not reveal, that Verteq explicitly threatened SSEC. The letters reveal a preliminary discussion between two commercial entities discussing patent rights. In its May 8, 2001, letter, Defendant Verteq explicitly stated that it wished to "amicably resolve this matter." Complaint, Exhibit B. [FN2]

>   FN2. In *Arrowhead v. Ecolochem,* 846 F.2d at 733, the Federal Circuit found that Ecolochem's communications to Arrowhead did constitute express charges of infringement. For example, Ecolochem wrote to Arrowhead stating:
>   [Ecolochem] has reason to believe that Arrowhead is contemplating or has initiated the practice of the patented process" and demanding, within 20 days, a confirmation that any 'unauthorized' practice, 'if such practice exists' be 'immediately' discontinued. The letter concluded with a statement that Ecolochem 'has in the past not hesitated to protect its patent rights whenever appropriate.
>   *Id.* The instant correspondence is fundamentally distinct from Ecolochem's communications.

*4 Second, the totality of Verteq's conduct, including statements and correspondence, do not amount to an implicit threat of litigation. In *Shell Oil,* 970 F.2d at 885, a declaratory judgment suit was dismissed due to lack of actual controversy despite the defendant's repeated statements that the plaintiff's product fell within its patent and its affirmation that it would assert its patent. The court categorized the language as mere "jawboning" typical in licensing negotiations. *Id.* The tone and content of the written correspondence in the instant case is substantially more subdued and less litigious

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 4
2003 WL 21654705 (E.D.Pa.)
(Cite as: 2003 WL 21654705 (E.D.Pa.))

than the communication in *Shell Oil.* [FN3] In the present case, Verteq merely brought the existence of the patent to SSEC's attention and requested a review by SSEC as to whether its product fell within the patent; it may not be fairly stated that Verteq asserted that SSEC's product was covered by the patent. Additionally, in presenting this question, Verteq expressly sought an amicable, or commercial, resolution of the inquiry. Complaint, Exhibit B. These inquiries were objectively non-threatening in tone and content. This effort to resolve differences without litigation is appropriate within the competitive marketplace of American business. Thus, the totality of the circumstances present in the instant case are markedly distinct from the factual pattern presented in *Arrowhead* in which the Federal Circuit found that the defendant's conduct had created an objectively reasonable apprehension of suit. [FN4] *Id.*

>   FN3. In *Shell Oil Company,* 970 F.2d at 885, the language that the plaintiff interpreted as "threatening a lawsuit" was far more "express" than the language and tone of the two letters noted above. At issue was whether Shell's catalyst product infringed the Amoco patent. In Amoco's first letter to Shell it wrote: "it is our understanding form [sic] our previous discussion that *the catalyst falling within the Amoco patent* would be used in one plant in Europe and one non-Unipol plant in the U.S." *Id.* at 886. Shell contended that the language "falling within" constituted a threat of infringement. *Id.* This exchange was followed by telephone discussions and meetings between the parties about Shell's use of the catalyst. However, this subsequent communication after the first alleged threat did not lead to resolution. On the contrary, argued Shell, Amoco continued its threats of infringement in a letter which reflected that Amoco did not accept Shell's position that its proposed catalyst did not infringe Amoco's patent. *Id.* at 887. Finally, as the Federal Circuit noted, "when Shell specifically asked Amoco if it intended to enforce its patent, Amoco responded 'Yes.' " *Id.* at 888.

>   FN4. The following circumstances were present in *Arrowhead*: threatening letters in which defendant expressed its intent to enforce its patent rights by litigation; a patent infringement suit brought by defendant against a company with which Arrowhead was to conduct business evidenced "not only an intent but a willingness and capacity to employ litigation in pursuit of its patent rights"; and defendant's submission to a federal court in its patent infringement suit that the court find plaintiff to be an infringer. *Arrowhead,* 846 F.2d at 737. All are absent from the instant case.

If SSEC were correct in its assertion that Verteq's action reasonably threatened a lawsuit, a patent holder would not be able to inquire about the possibility of patent infringement by another other party without subjecting itself to a suit under the Declaratory Judgment Act. The Declaratory Judgment Act applies to circumstances where "the patent owner attempts extra-judicial enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity." *Arrowhead,* 846 F.2d at 735. Since the instant case presents nothing more than "negotiation unaccompanied by threats of legal action, the setting is not sufficiently adverse to create a justiciable controversy." *EMC Corporation v. Norand Corporation,* 89 F.3d 807 (Fed.Cir.1993).

Moreover, this Court finds SSEC's alleged apprehension of suit to be the product of subjective interpretation, and not objectively reasonable. *BP Chemicals Ltd.,* 4 F.3d at 979 (affirming that a plaintiff's subjective apprehension is insufficient without objective substance). The Court finds that SSEC's arguments concerning Verteq's allegedly aggressive and urgent telephone calls, which prompted SSEC to check the "CHASER docket" to see whether Verteq had filed suit before SSEC instituted its Declaratory Judgment suit, are legally

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 5
2003 WL 21654705 (E.D.Pa.)
**(Cite as: 2003 WL 21654705 (E.D.Pa.))**

insufficient. A plaintiff's subjective apprehension of suit has clearly been rejected as insufficient to satisfy the burden of establishing that the plaintiff had an objectively apprehension that it would be sued for infringement such that the first prong of the "actual controversy" test is satisfied.

In addition, SSEC has not produced a history of patent litigation initiated by Verteq against other competitors or by Verteq against SSEC in regards to other products. *Compare Arrowhead,* 846 F.2d at 737.

*5 Consequently, the Court holds that SSEC has not provided sufficient evidence of threat of suit by Verteq to satisfy the first prong of the actual controversy test. Because the Court finds that the first part of the "actual controversy" test in the patent infringement context is not satisfied, a determination of whether SSEC engaged in activity which could constitute infringement or took concrete steps with the intent to conduct such activity is not necessary.

In conclusion, the Court finds that an actual controversy between SSEC and Verteq did not exist such that the Court may properly exercise subject matter jurisdiction over this matter. The Court is not satisfied that an actual controversy exists that would warrant granting declaratory judgment under the Declaratory Judgment Act.

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction is GRANTED; Plaintiff's Complaint for Declaratory Judgment is DISMISSED; Plaintiff's prayer that the Court enjoin Defendant Verteq from filing a patent infringement suit against Plaintiff Solid State is DENIED. This is a FINAL JUDGMENT. The Clerk of Court is directed to statistically close this matter.

2003 WL 21654705 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

- 2:01CV04423  (Docket)
                            (Aug. 29, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B



Not Reported in F.Supp.2d

Page 1

2003 WL 22750145 (D.Del.)

**(Cite as: 2003 WL 22750145 (D.Del.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
SYMBOL TECHNOLOGIES, INC., Plaintiff,
v.
HAND HELD PRODUCTS, INC. and HHP-NC,
Inc., Defendants.
**No. Civ.A. 03-102-SLR.**

Nov. 14, 2003.

Arthur G. Connolly, III, Connolly, Bove, Lodge & Hutz, Andre G. Bouchard, Bouchard, Margules & Friedlander, Wilmington, DE, for Plaintiff.

Donald F. Parsons, Jr., Mary B. Graham, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Defendants.

MEMORANDUM ORDER

ROBINSON, J.

I. INTRODUCTION

*1 Currently before the court are the following motions by the defendants Hand Held Products, Inc. and HHP-NC, Inc. (collectively "HHP"): 1) motion to dismiss U.S. Patent No. 5,591,956 of Count II for lack of subject matter jurisdiction; 2) motion to dismiss U.S. Patent No. 5,130,520 of Count I from the action because HHP holds a valid license; 3) motion to dismiss plaintiff's infringement and noninfringement claims from Counts I and II pursuant to Fed.R.Civ.P. 8 and 12(b)(6) for failure to state a claim; 4) motion to dismiss Count II of the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction for failure to satisfy the jurisdictional requirements of 18 U.S.C. § 2201; 5) motion to dismiss plaintiff's invalidity and unenforceability claims from Count II pursuant to Fed.R.Civ.P. 8 and 12(b)(6) for failure to give notice of the bases for claims of invalidity and unenforceability; 6) motion to strike plaintiff's unenforceability allegations pursuant to Fed.R.Civ.P. 12(b)(6) for failure to plead fraud with particularity; and 7) motion for a more definite statement as to Counts I and II. (D.I.10) For the reasons and to the extent stated below, the court grants in part and denies in part HHP's motions.

II. BACKGROUND

Plaintiff Symbol Technologies, Inc. ("Symbol") and HHP are competitors in the hand-held optical scanner industry, each holding patents and manufacturing a variety of products. Symbol is the owner of U.S. Patent Nos. 5,029,183; 5,130,520; 5,157,687; 5,479,441; 5,521,366; 5,646,390; 5,702,059; 5,783,811; 5,818,028; 6,00,612; 6,019,286; and 6,105,871 (collectively, the "Symbol Patents"). HHP is the owner of U.S. Patent Nos. 5,286,960; 5,291,008; 5,391,182; 5,420,409; 5,463,214; 5,569,902; 5,591,956; 5,723,853; 5,723,868; 5,773,806; 5,773,810; 5,780,834; 5,784,102; 5,786,586; 5,793,967; 5,801,918; 5,825,006; 5,831,254; 5,837,985; 5,838,495; 5,900,613; 5,914,476; 5,929,418; 5,932,862; 5,942,741; 5,949,052; 5,949,054; 5,965,863; 6,015,088; 6,060,722; 6,161,760; 6,298,176; 6,491,223; D392,282; D400,199, and D400,872 (collectively the "HHP Patents").

In September 1999, HHP was acquired by Welch Allyn, Inc. ("Welch Allyn"), a direct competitor of Symbol. Later that fall, Welch Allyn announced that it intended to acquire another competitor of Symbol's, PSC, Inc., with whom Symbol was engaged in patent litigation.

On March 13, 2000, Welch Allyn's in-house

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                    Page 2
2003 WL 22750145 (D.Del.)
**(Cite as: 2003 WL 22750145 (D.Del.))**

counsel sent an email to Symbol's in-house patent counsel indicating that certain Welch Allyn patents might "present problems" to Symbol's Golden Eye product line. (D.I.19)

On June 6, 2000, Welch Allyn began negotiating with Symbol on behalf of Welch Allyn's newly acquired subsidiary, PSC, Inc. (*Id.*) Later that month, a meeting was held between Symbol and Welch Allyn to discuss the licensing of certain patents held by HHP relating to the Golden Eye product line. At that meeting, a list of twenty-three (23) patents was presented to Symbol which Welch Allyn viewed as relevant. (*Id.*)

*2 On June 28, 2000, a second list was provided to Symbol by HHP in response to a request made at the earlier meeting. This second list contained only ten (10) patents, eight of which were previously listed on the first list, and two of which were new additions. The June 28 letter indicated that these patents should be the topic of further licensing discussions between the parties. (*Id.*)

On November 30, 2000, Symbol acquired Telxon, a Texas company that was at the time engaged in patent-related disputes with Welch Allyn. Previously that year, Welch Allyn had sent a list of patents to Telxon, identical to the first list sent to Symbol, and suggested that Telxon's products might be infringing. Welch Allyn had also previously raised infringement issues with Metanetics, a Telxon subsidiary. (*Id.*)

Relations between Symbol and Welch Allyn deteriorated completely when Welch Allyn filed a lawsuit against Symbol in North Carolina regarding a certain contract that they shared to provide products to the United States Postal Service. (*Id.*)

On January 21, 2003, Symbol filed a two-count complaint alleging that HHP has infringed the Symbol Patents and seeking declaratory judgment that the HHP Patents are not infringed, invalid and/or unenforceable. (D.I.1)

In Count I of the complaint, Symbol alleges that "HHP infringed and continues to infringe, has induced and continues to induce others to infringe, and/or has committed and continues to commit acts of contributory infringement of, one or more claims of each of the Symbol Patents." (D.I. 1 at 6) In Count II of the complaint, Symbol seeks a declaratory judgment that the HHP Patents are noninfringed, invalid, and unenforceable. (*Id.*)

III. DISCUSSION

A. HHP's Motion to Dismiss U.S. Patent No. 5,591,956

HHP contends that the court is without subject-matter jurisdiction as to U.S. Patent No. 5,591,956 (" '956 patent"). (D.I.11) At oral arguments before the court on October 28, 2003, HHP's counsel affirmatively stated that the '956 patent is dedicated to the public; therefore, this patent will be dismissed from the complaint.

B. HHP's Motion to Dismiss U.S. Patent No. 5,130,520

HHP contends that U.S. Patent No. 5,130,520 (" '520 patent") should be dismissed because it is the subject of a valid license from Symbol. Symbol contends that there is a license for the '520 patent, but that it pertains to a narrow field of use. It is established law that a licensee that exceeds the scope of its license may be held liable for infringement. *See General Talking Pictures Co.,* 304 U.S. 175, 58 S.Ct. 849, 82 L.Ed. 1273 (1938); *Eli Lily & Co. v. Genentech Inc.,* 17 U.S.P.Q.2d 1531, 1534 (S.D.Ind.1990). Consequently, HHP's motion to dismiss the '520 patent will be denied.

C. HHP's Motion to Dismiss Infringement and Noninfringement Claims from Count I and II for Failure to State a Claim, Motion to Dismiss Symbol's Claims of Invalidity and Unenforceability, and Motion for a More Definite Statement

*3 HHP contends that Symbol's complaint is facially defective under Fed.R.Civ.P. 8(a), as it fails to provide sufficient notice of which of HHP's products infringe claims under the Symbol Patents and which of Symbol's products may infringe HHP

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 3
2003 WL 22750145 (D.Del.)

**(Cite as: 2003 WL 22750145 (D.Del.))**

Patents. (D.I. 11 at 16) HHP, however, has failed to cite any precedent binding upon this court that requires a complaint to identify the basis of an infringement claim with such particularity. [FN1] It is established law that liberal pleading requirements are designed to put the parties on notice generally as to the nature of the cause of action. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Weston v. Pennsylvania,* 251 F.3d 420, 429 (3d Cir.2001). Particularly in complex litigation, it is through the discovery process that the parties refine and focus their claims. At this stage in the litigation, the court declines to dismiss Symbol's claims until adequate discovery has been completed.

> FN1. The court notes that HHP attempts to bootstrap Fed.R.Civ.P. 11 requirements into Rule 8, without actually alleging that Symbol's complaint is frivolous. (D.I. 11 at 9-10) In the absence of an actual motion by HHP to the contrary, the court will assume that Symbol's counsel has complied with their ethical obligations under Fed.R.Civ.P. 11.

In the alternative, HHP moves the court to require Symbol to provide a more definite statement pursuant to Fed.R.Civ.P. 12(e). A motion under Rule 12(e) is to correct a pleading that is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." The purpose, however, of Rule 12(e) is not to make it easier for the moving party to prepare its case. Fed.R.Civ.P. 12 advisory committee's note. In this case, the crux of HHP's motion is that Symbol's complaint is simply too large. There are, however, a finite number of claims and a finite number of infringing products. Consequently, the court finds that traditional mechanisms of discovery are the proper tools to refine the scope of this litigation. HHP's motions in this regard will be denied.

D. HHP's Motions to Dismiss Count II for Lack of Subject Matter Jurisdiction

HHP contends that the court is without subject matter jurisdiction as to the HHP Patents, as there is not an actual controversy within the meaning of §

2201. (*Id.*) See *Vectra Fitness, Inc. v. TNWK Corp.,* 162 F.3d 1379, 1383 (Fed.Cir.1998).

Declaratory judgment pursuant to 28 U.S.C. § 2201 requires that there be "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *BP Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 978 (Fed.Cir.1993). In reaching its conclusion, the court must apply a totality of the circumstances standard. See *C.R.Bard, Inc. v. Schwartz,* 716 F.2d 874, 880 (Fed.Cir.1983).

The recent contentious and litigious history between the parties weighs in favor of a finding that Symbol has a reasonable apprehension of suit. In *EMC Corp. v. Norand Corp.,* 89 F.3d 807 (Fed.Cir.1996), the Federal Circuit stated that the "test for finding a 'controversy' for jurisdictional purposes is a pragmatic one and cannot turn on whether the parties use polite terms in dealing with one another or engage in more bellicose saber rattling." *Id.* at 811. The Court of Appeals continued and emphasized that "the question is whether the relationship between the parties can be considered a 'controversy,' and that inquiry does not turn on whether the parties have used particular 'magic words' in communicating with one another." *Id.* at 812. Therefore, the absence of an explicit threat of suit, while a factor, is not dispositive. See *BP Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 979 (Fed.Cir.1993) ( "Declaratory judgment jurisdiction does not require direct threats.").

*4 Further, it is relevant under Federal Circuit precedent that at oral argument HHP did not affirmatively state that it would not bring suit. In *C.R. Bard Inc.,* the Court of Appeals held that a plaintiff had a reasonable apprehension of suit when the defendant in a declaratory judgment declined to affirmatively state at oral arguments that he would not bring a suit for infringement against the plaintiff. [FN2] 716 F.2d at 881.

> FN2. The court is not entirely comfortable

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 4
2003 WL 22750145 (D.Del.)
**(Cite as: 2003 WL 22750145 (D.Del.))**

with the notion that a plaintiff might bring a declaratory judgment against a defendant for the purpose of forcing an admission of the defendant's intent to enforce its patent rights. The court is also uncomfortable with the notion that a defendant might plead that the plaintiff has no reasonable apprehension of suit, and then file in another forum once the declaratory judgment has been dismissed for want of subject matter jurisdiction. Nonetheless, the Federal Circuit in *C.R. Bard* made it clear that the failure to deny an intent to sue for infringement is a factor to be considered.

Having concluded that the totality of circumstances sufficiently demonstrates a reasonable apprehension of suit, nonetheless, Symbol has not established a reasonable apprehension of suit with respect to each of the named HHP Patents. At most, the affidavit and accompanying documents filed to support the complaint suggest that only those patents referenced in the June 28, 2000 correspondence from Welch Allyn are proper subjects of a declaratory judgment suit. [FN3] Consequently, the court will dismiss without prejudice those HHP Patents which were not the subject of the June 28, 2000 correspondence.

>   FN3. Those patents are: U.S. Patent Nos. 5,286,960; 5,900,613; 5,723,868; 5,780,834; 5,784,102; 5,825,006; 5,831,254; 6,060,722; 5,929,418; and 5,965,863.

With respect to the remaining HHP Patents, the court finds that Symbol satisfies the "present activity" requirement of § 2201. It is sufficient that Symbol engages in the manufacture and production of products sufficiently similar to HHP's patents. *See Millipore Corp. v. Univ. Patents, Inc.,* 682 F.Supp. 227, 232 (D.Del.1987). Moreover, the fact that HHP's own correspondence to Symbol suggests that licensing of its patents may be needed is sufficient for the court to conclude that there is "present activity" as required under § 2201.

E. HHP's Motion to Strike Symbol's Allegations of Unenforceability for Failure to Plead with Particularity

The court will dismiss Symbol's claims for unenforceability without prejudice. Fraud is a clear exception to the otherwise broad notice-pleading standards under Fed.R.Civ.P. 9. A claim of patent unenforceability is premised upon inequitable conduct before the Patent & Trademark Office ("PTO"), which is a claim sounding in fraud. A plaintiff alleging unenforceability, therefore, must plead with particularity those facts which support the claim the patent holder acted fraudulently before the PTO. As Symbol has failed to adequately plead its bases for unenforceability of the remaining HHP Patents, that portion of Count II will be dismissed without prejudice.

IV. CONCLUSION

At Wilmington this 14th day of November, 2003, having held oral argument and reviewed HHP's motion to dismiss pursuant to Fed.R.Civ.P. 8(a), 9, 12(b)(1), 12(b)(6) and 12(f), or in the alternative for a more definite statement pursuant to Rule 12(e) (D.I.10), and Symbol's response thereto;

IT IS ORDERED that:

1. HHP's motion to dismiss Count II of Symbol's complaint with respect to U.S. Patent No. 5,591,956 is granted. (D.I.10-1)

2. HHP's motion to dismiss U.S. Patent No. 5,130,520 of Count I is denied. (D.I.10-2)

3. HHP's motion to dismiss infringement and noninfringement claims from Counts I and II of the complaint pursuant to Fed.R.Civ.P. 8 and 12(b)(6) is denied. (D.I.10-3)

*5 4. HHP's motion to dismiss Count II of the complaint pursuant to Fed. R. Civ P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction is granted with respect to U.S. Patent Nos. 5,291,008; 5,391,182; 5,420,409; 5,463,214; 5,5697,902; 5,723,853; 5,773,806; 5,773,810; 5,786,586; 5,793,967; 5,801,918; 5,837,985; 5,838,495;

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 5
2003 WL 22750145 (D.Del.)

**(Cite as: 2003 WL 22750145 (D.Del.))**

5,914,476; 5,932,862; 5,942,741; 5,949,052; 5,949,054; 6,015,088; 6,161,760; 6,298,176; 6,491,223; D392, 282; D400,199; and D400,872, and is denied with respect to U.S. Patent Nos. 5,286,960; 5,900,613; 5,723,868; 5,780,834; 5,784,102; 5,825,006; 5,831,254; 6,060,722; 5,929,418; and 5,965,863. (D.I.10-4)

5. HHP's motion pursuant to Fed.R.Civ.P. 8 and 12(b)(6) to dismiss Symbol's invalidity and unenforceability claims from Count II is denied. (D.I.10-5)

6. HHP's motion to strike Symbol's allegations of unenforceability pursuant to Fed.R.Civ.P. 12(b)(6) or 12(f) is granted. (D.I.10-6)

7. HHP's motion for a more definite statement is denied. (D.I.10-7)

2003 WL 22750145 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

- 1:03CV00102 (Docket)
  (Jan. 21, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.