# Exhibit A



## The NutraSweet Company

FILE

, 2001

Serge Boukobza
resident
Deborel Maroc S.A.
40, Boulevard d'Anfa
20000 Casablanca
MA

Dear Mr. Boukobza:

This letter confirms the interest of Deborel Maroc S.A. in purchasing NutraSweet® brand of aspartame for resale and use in Morocco. Unfortunately, The NutraSweet Company is prohibited by contractual agreement from exporting to Morocco. However, this contractual limitation applies only to NSC, and therefore third parties may be able to supply NutraSweet® brand aspartame to Deborel Maroc.

I would be happy to assist you in locating a third party that may be able and willing to supply NutraSweet to Deborel Maroc for resale and use in Morocco. In the interim, I can advise you that one such company who may be able to provide NutraSweet to Deborel Maroc is Vopak Chemical Distribution Europe B.V. If you would like to discuss the possible supply of NutraSweet with Vopak, please contact:

> Mr. Jacques Voogt
> Vice President Sourcing
> Vopak Chemical Distribution Europe B V.
> Blaak 333
> 3011 GB Rotterdam
> The Netherlands
> Telephone: (31) 10 4002502
> Facsimile: (31) 10 4134428.

As stated above, NSC may not be a party to any such agreement, and the terms of any such sale would be as mutually agreed between Deborel Maroc and Vopak.

If you have any questions regarding this matter, please contact me. Thank you for your interest in NutraSweet brand of aspartame.

Kind regards,

Craig R. Petray
Executive Vice President

c.c. Mr. David T. Bowman

# Exhibit B

Case 1:05-cv-00318-SLR    Document 16-2    Filed 07/22/2005    Page 3 of 19

PAGE 1
DETAILED DISPLAY OF A PIERS EXPORT RECORD
PIERS FORMAT: EXP136
US EXPORTS FOR ASPARTAME GRANULES
JUNE 2001 DATA
EXPORTER: ( COMPANY NUMBER: 00093851000000 )
SEAMATES INTL
316 MAIN ST
E RUTHERFORD, NJ 07073
COMMODITY DETAILS
MANIFEST COMMODITY DESCRIPTION: ASPARTAME GRANULES
JOC STANDARD COMMODITY DESCRIPTION AND CODE
7 DIGIT : SACCHARIN, SWEETNERS; NOS( 4600625)
4 DIGIT : SACCHARIN, VANILLLIN( 4600)
HARMONIZED COMMODITY DESCRIPTION AND CODE
6 DIGIT : CYCLIC AMIDES, DERIVATIVES AND SALTS OF, NESOI( 292429)
4 DIGIT : CARBOXYAMIDE.FUNCTION COMP;
AMIDE.FUNCTION COM ETC( 2924)
DIRECTION : E SHIP LINE: EVER VESSEL : EVER ROUND
VOYAGE NUMBER : 48 VESSEL CODE:
DEPARTURE DATE FROM U. S. PORT: 01/ 06/ 29
U. S. PORT & CODE : CHARLESTON( 1601)
FOREIGN PORT & CODE : HAMBURG( 42879)
DESTIN POINT & CODE : GOTHENBURG( 40117)
COUNTRY & CODE : SWEDEN( 401)
CARGO PARTICULARS
PACKAGING QTY/ TYPE : 120PLT 4,000 CU FT
CONFLAG: C CONTAINER QTY/ SIZE: 340
6.00 TEU S 33.75 METRIC TONS
$459,571 ESTIMATED VALUE THIS TRANSACTION
BILL OF LADING: 405170046334 MANIFEST NUMBER: 620
RECORD NUMBER : 49630405 AVAILABLE FROM PIERS AS
OF: 01/ 07/ 20

# Exhibit C



# NutraSweet
BRAND SWEETENER

ASPARTAME [22839-47-0]    A00120

Caution: Avoid high heat and store under dry conditions.

Keep container tightly closed and inner bag sealed.

THE NUTRASWEET COMPANY    200 WORLD TRADE CENTER CHICAGO, IL 60654    TEL: 1-800-323-5321

117 DRUM

LOT NUMBER: A10413

GROSS WEIGHT: 64 LB / 29.0 KG

NET WEIGHT: 55 LB / 25.0 KG

APPROVED FOR PASSOVER

MADE IN U.S.A.

10040356

# Exhibit D




# The NutraSweet Company

1762 Lovers Lane, Augusta, GA 30901
Telephone (800) 323-5321

## CERTIFICATE OF ANALYSIS

ASPARTAME (NUTRASWEET®) (L-ASPARTYL-L-PHENYLALANINE METHYL ESTER)

PART NUMBER: A00120            DATE OF MANUFACTURE: 13Apr2001            LOT NUMBER: A10413

DOCUMENT(S): GG-QA-10-014/-017/-018/GF-QA-10-010-GENERAL

DESCRIPTION: SWEET, WHITE POWDER

| DETERMINATION | ACCEPTANCE CRITERIA | RESULTS |
|---|---|---|
| ID Test | CONFORMS TO STANDARD | CONFORMS TO STANDARD |
| ASSAY (DRIED BASIS) | 98.0% TO 102.0% | 98.6% |
| SPECIFIC ROTATION (20°C) | +14.5° TO +16.5° | 15.8° |
| TRANSMITTANCE | NLT 95.0% | NLT 95.0% |
| DIKETOPIPERAZINE (DKP) | NMT 1.5% | 0.1% |
| RESIDUE ON IGNITION | NMT 0.2% | 0.1% |
| HEAVY METALS (as Pb) | NMT 10 ppm | NMT 10 ppm |
| ARSENIC | NMT 3 ppm | NMT 3 ppm |
| LEAD | NMT 1 ppm | NMT 1 ppm ** |
| LOSS ON DRYING | NMT 4.5% | 3.0% |
| ORGANIC VOLATILE IMPURITIES-USP/NF | PASS | PASS ** |
| pH (0.8% SOLUTION) | 4.5 TO 6.0 | 5.2 |
| OTHER RELATED SUBSTANCES/ CHROMATOGRAPHIC IMPURITIES | NMT 2.0% | NMT 2.0% |
| L-PHENYLALANINE | NMT 0.5% W/W | NMT 0.5% ** |
| α-ASPARTYL PHENYLALANINE | NMT 0.5% W/W | NMT 0.5% ** |
| OTHER IMPURITIES | NMT 1.5% W/W | NMT 1.5% ** |
| CONDUCTIVITY | NMT 30 ms/cm | NMT 30 ms/cm |
| TOTAL AEROBIC BACTERIA | NMT 250 PER GRAM | NMT 250 PER GRAM |
| FUNGI | NMT 100 PER GRAM | NMT 100 PER GRAM |
| MICROORGANISMS OF PUBLIC HEALTH CONCERN | NONE DETECTED | NONE DETECTED |
| APPEARANCE OF SOLUTION | COLOR NMT GY6 REF. STD SOLUTION IS CLEAR | PASS ** |

** CERTIFIES COMPLIANCE

CONFORMS TO THE PURITY CRITERIA OF THE FOOD CHEMICALS CODEX 4th EDITION,
U.S. PHARMACOPEIA 24/NATIONAL FORMULARY 19, THE COUNCIL DIRECTIVE 95/31/EEC
OF 5 JULY 1995 AND EUROPEAN PHARMACOPOEIA REQUIREMENTS.

RELEASED BY: MARSHA LUSIGNAN                                EXPIRATION DATE: 13Apr2006

# Exhibit E

# AJINOMOTO Co., Inc.

## Sweetener Department
## AminoScience Division
15-1 Kyobashi 1-chome, Chuo-ku, Tokyo, 104-8315 Japan
Tel. +81-3-5250-8179   Fax. +81-3-5250-8315

May 9, 2000

R. Scott Falk, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, Illinois 60601
U. S. A.

### VIA FACSIMILE

Dear Mr. Falk:

This is in response to your April 28 e-mail to Mr. Takehara of the Legal Dept. regarding the Wrigley matter.

Ajinomoto's understanding is that, after the closing, NutraSweet Company will not be able to sell aspartame to users, such as Wrigley, which are known to export the aspartame to Europe, regardless whether its origin is Ajinomoto or Monsanto. If NutraSweet Company wishes to supply aspartame to Wrigley in Europe after the closing, we suggest that NutraSweet Company purchase aspartame to be supplied to Wrigley in Europe from Ajinomoto under the Bulk Aspartame Supply Agreement.

With respect to the German notification, we are glad to learn that the FCO gave its clearance. As specified in the attached copy of the letter from the FCO, we have to pay a fee in the amount of DM20,000. I recall that it was the agreement between Monsanto and Ajinomoto that such fee be shared equally. Therefore, we propose that each of Monsanto and Ajinomoto remit DM10,000 to the account specified in the letter respectively. Please confirm that this approach is acceptable. Upon receipt of your confirmation, we will proceed to make our portion of the payment.

Finally, with regard to the special distribution, we received a copy of Mr. Wolpert's fax this morning. We will get back to you or Mr. Wolpert on this matter in a couple of days.

We hope we can settle everything shortly and close the transactions in May, as contemplated in the Share Purchase Agreement.

Yours sincerely,

Toshio Takahashi
General Manager

cc:   Mr. Wolpert
      Mr. Sugizaki, Mr. Sato and Mr. Takehara

# Exhibit F

# Exhibit F

## CLEARY, GOTTLIEB, STEEN & HAMILTON

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999

2000 PENNSYLVANIA AVENUE, N.W
WASHINGTON, DC 20006-1801

41, AVENUE DE FRIEDLAND
75008 PARIS

RUE DE LA LOI 57
1040 BRUSSELS

CITY PLACE HOUSE
55 BASINGHALL STREET
LONDON EC2V 5EH

MAIN TOWER
NEUE MAINZER STRASSE 52
60311 FRANKFURT AM MAIN

PIAZZA DI SPAGNA 15
00187 ROME

BANK OF CHINA TOWER
ONE GARDEN ROAD
HONG KONG

SHIN KASUMIGASEKI BUILDING
3-2, KASUMIGASEKI 3-CHOME
CHIYODA-KU, TOKYO 100-0013

ROGER W THOMAS
PETER KARASZ
MARK A. WALKER
LESLIE B SAMUELS
ALLAN G SPERLING
MAX GITTER
SANDRA S WEIKSNER
EVAN A. DAVIS
ROBERT T GREIG
CHRISTOPHER H LUNDING
LAURENT ALPERT
BARRY M FOX
VICTOR I LEWKOW
LESLIE N SILVERMAN
ROBERT L. TORTORIELLO
A RICHARD SUSKO
STEPHEN H SHALEN
RICHARD F. ZIEGLER
LEE C BUCHHEIT
JAMES M PEASLEE
THOMAS J MOLONEY
DAVID G SABEL
EDWARD D KLEINBARD
JONATHAN I BLACKMAN
WILLIAM F GORIN
MICHAEL L. RYAN
ROBERT P DAVIS
YARON Z. REICH
RICHARD S LINCER
JAIME A. EL KOURY
STEVEN G HOROWITZ

ANDREA G PODOLSKY
RUSSELL H. POLLACK
STEVEN M LOEB
DANIEL S. STERNBERG
DONALD A STERN
CRAIG B BROD
SHELDON H ALSTER
WANDA J OLSON
MITCHELL A LOWENTHAL
DEBORAH M BUELL
EDWARD J ROSEN
LAWRENCE B FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E AUSTIN
SETH GROSSHANDLER
JANET L FISHER
DAVID L SUGERMAN
HOWARD S ZELBO
DAVID E BRODSKY
ARTHUR H KOHN
ANA DEMEL
RAYMOND B. CHECK
RICHARD J COOPER
JEFFREY S LEWIS
FILIP MOERMAN
PAUL J SHIM
YVETTE P TEOFAN
ERIKA W NIJENHUIS
LINDSEE P GRANFIELD
ANDRES DE LA CRUZ
DAVID C LOPEZ

CARMEN A CORRALES
JAMES L BROMLEY
PAUL E GLOTZER
YONG G LEE
MICHAEL A. GERSTENZANG
JORGE U JUANTORENA
MICHAEL D WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A KLINGSBERG
RESIDENT PARTNERS

SANDRA M ROCKS
ELLEN M CREEDE
S. DOUGLAS BORISKY
JUDITH KASSEL
DANA G FLEISCHMAN
DAVID E WEBB
JOSHUA H RAWSON
DEBORAH E KURTZBERG
PENELOPE L CHRISTOPHOROU
MICHAEL D DAYAN
BOAZ S MORAG
MARY E ALCOCK
GABRIEL J MESA
DAVID H SALTZMAN
SPECIAL COUNSEL

Writer's Direct Dial: (212) 225-2174
E-Mail: jrawson@cgsh.com

April 8, 2002

VIA FACSIMILE
and FEDERAL EXPRESS

Mr. Nick Rosa
President
The NutraSweet Company
10 South Wacker Drive
Suite 3200
Chicago, IL 60606

David Bowman, Esq.
General Counsel
The NutraSweet Company
10 South Wacker Drive
Suite 3200
Chicago, IL 60606

## FOR SETTLEMENT PURPOSES ONLY

Re:    Release and License Agreement

Dear Mr. Rosa and Mr. Bowman:

I am writing on behalf of Ajinomoto Corporation ("Ajinomoto") with reference to the two letters, each dated March 29, 2002, sent on behalf of NutraSweet Company ("NSC") by Nick Rosa and David Bowman.

Mr. Nick Rosa
David Bowman, Esq., p. 2

Ajinomoto wishes to confirm our meeting this week in New York beginning on April 9, 2002 at 3:00 p.m., in our midtown offices at 153 East 53rd Street (the Citicorp. Building). As I discussed with Mr. Bowman, if appropriate, we are prepared to continue the meeting on the morning of Wednesday, April 10. We understand that Mr. Petray and Mr. Bowman will attend these meetings on behalf of NSC. Messrs. Morioka and Miyama and I will attend on behalf of Ajinomoto.

Although Ajinomoto is pleased to receive your report that NSC has "ended the shipments objected to," we disagree with assertions made in your letters. First, we find your letter insufficiently clear for us to determine whether there remains a disagreement between the parties over this subject. In particular, we are unsure precisely which types of sales you are agreeing not make in the future. Indeed, since Ajinomoto issued the Notice of Breach on March 27, we learned of a further export of aspartame, apparently by NSC, in February 2002 to a customer in Israel. Thus, we remain unconvinced that there is no longer a dispute between the parties regarding the meaning of Section 2.3 of the Release and License Agreement (the "Agreement"). We hope that you will be able to clarify these points in our meeting later this week.

Second, Ajinomoto does not agree that NSC has cured the breaches identified in Ajinomoto's Notice of Breach dated March 27. Even if NSC refrains from participating in future exports to the Excluded Territories, this alone will not be sufficient to cure the past breaches. Although you have provided us with insufficient information for us to know the full scope of the violations, to our understanding more than 60 metric tons of NSC aspartame have been exported to the Excluded Territories to date in violation of the Agreement. We assume from your letters that NSC has not recovered this product from its customers. Therefore, these breaches remain uncured, and under the terms of the Agreement NSC has sixty days from the date of receipt of the Notice of Breach to cure these breaches.

Under the Agreement, it is NSC's obligation to find a way to cure these breaches. However, consistent with the spirit of our discussions to date, we submit the following proposal for discussion at our meeting later this week:

1.    NSC will issue a clear, written undertaking, clarifying that it will not direct or indirectly export, or cause or induce others to export, aspartame to the Excluded Territories.

2.    NSC will agree to notify its customers that NSC-manufactured aspartame is not licensed for sale in the Excluded Territories, including by placing appropriate labeling on its invoices and product packaging.

3.    NSC will provide Ajinomoto the right to conduct periodic audits of NSC's sales records, to confirm its compliance with the Agreement, including items 1 and 2 above.

4.    The parties will agree on a specified penalty to be assessed against NSC in the event of any future violation of the export prohibition.

Mr. Nick Rosa
David Bowman, Esq., p. 3

      5.     NSC will pay compensation to Ajinomoto for all NSC-aspartame that to date has been exported to the Excluded Territories. The parties will agree on a method for auditing NSC's sales records so that an accurate accounting can be provided to Ajinomoto for the purpose of calculating the amount of such compensation.

      It is our understanding that the NSC representatives will be authorized to discuss a specific resolution of the outstanding dispute, and in particular will be prepared to provide specific responses to the foregoing proposal. We look forward to meeting with you later this week.

Sincerely,

Joshua H. Rawson

# Exhibit G



# The NutraSweet Company

David J. Bowman
Executive Vice President, General Counsel & Secretary

April 10, 2002                                              VIA FACSIMILE

Josh H. Rawson, Esq.
Cleary, Gottlieb, Steen & Hamilton
One Liberty Plaza
New York, NY 10006-1470

    Re:  Release And License Agreement

Dear Mr. Rawson:

This will confirm receipt of your letter of April 8, 2002, as well as the meeting held in your New York offices on April 9, 2002 between Mr. Craig Petray and me on behalf of The NutraSweet Company ("NSC"), and Messrs. Miyama and Morioka and you on behalf of Ajinomoto Co., Inc. ("Ajinomoto").

During the course of the meeting, and without either party admitting the validity of any claims asserted by the other party, and without admitting liability on the part of any party, NSC and Ajinomoto entered into a discussion that the parties hoped would lead to a full, fair and complete good faith settlement of the dispute that exists between the parties regarding the Release And License Agreement (the "Agreement"). In the continued spirit of compromise, and without any admission on the part of NSC of any wrongdoing or liability under the Agreement, NSC offered at the end of the meeting to make a settlement proposal that addressed item number 5 in your letter of April 8, the payment of compensation to Ajinomoto, the terms of which follow.

On the issue of compensation Ajinomoto initially proposed that NSC purchase 130 metric tons of aspartame from Ajinomoto at a net price equal to the 2001 aspartame transfer price of $31 per kilogram. After some discussion, Mr. Petray countered with an offer to purchase 130 metric tons of aspartame from Ajinomoto at a price of $21 per kilogram, on or before September 30, 2003. The meeting ended with Ajinomoto proposing a price between $26 and $31 dollars per kilogram for the 130 metric tons of aspartame.

Based upon our understanding of the parties that purchased the product in question, it is believed that any sales lost by Ajinomoto are substantially less than 100 metric tons. While Ajinomoto expressed its belief that this possibility should not be taken into consideration in the determination of any compensation that may be paid to Ajinomoto, NSC respectfully believes that it should play a role in our efforts to resolve this matter. Therefore, NSC offers as compensation to Ajinomoto, to purchase 30 metric tons of

10 S. Wacker Drive, Suite 3390, Chicago, IL 60606
tel 312.873.5006  fax 312.873.5053  david.r.bowman@nutrasweet.com
www.nutrasweet.com

aspartame from Ajinomoto in 2002, at a price of $25 per kilogram, and 70 metric tons of aspartame in 2003, at a price of $23 per kilogram, on such other terms and conditions as are usual and customary in agreements of this type.

As stated above, the offer set forth herein is for settlement purposes only, and is not to be construed as an admission on the part of NSC of any wrongdoing or liability under the Agreement. In addition to the contingency stated above, the proposal contained in this letter is contingent on the parties mutual agreement to all other terms and conditions of the settlement agreement discussed at our meeting, which include a statement that clarifies the disputed terms of the Agreement, a method of NSC notifying its customers of certain aspects of the Agreement, and a method of certifying to Ajinomoto on an annual basis that NSC is in compliance with the terms of the Agreement. Our understanding is that you will prepare an initial draft of the remaining settlement terms by this evening, if possible, and in any event no later than tomorrow morning.

NSC is encouraged by and appreciates the continued efforts of Ajinomoto to resolve the dispute. In keeping with this effort, NSC will also continue to do all that is reasonably possible to conclude this matter as quickly as possible, and therefore looks forward to receipt of your draft of the outstanding settlement points, and Ajinomoto's response to the proposal set forth herein. To this end, we are available to discuss this at your and Ajinomoto's convenience, including this evening if desired.

Regards,

David T. Bowman
General Counsel

c.c. Mr. Nick Rosa
    Mr. Craig Petray



2

# Exhibit H



## The NutraSweet Company

April 15, 2002

VIA FACSIMILE

Joshua H. Rawson, Esq.
Cleary, Gottlieb, Steen & Hamilton
One Liberty Plaza
New York, NY 10006-1470

Re: Release and License Agreement

Dear Mr. Rawson

I am writing in response to your April 12, 2002 letter to David Bowman. The NutraSweet Company appreciates Ajinomoto's continued efforts to resolve this dispute. NSC is willing to purchase 130 metric tons of aspartame, under the following conditions.

--30 tons to be purchased before December 31, 2002 at USD $25 per kilogram

--100 tons to be purchased before March 31, 2003 at USD $23 per kilogram

If the above is acceptable, NSC is willing to accept the language of Ajinomoto's draft settlement document with only minor changes. Paragraph 8 would need to be amended to include the above changes. The only other required changes would be:

--In Paragraph 4, NSC would like the legend to begin: "For Augusta produced aspartame—not licensed . . ."

--Add before the last sentence of Paragraph 8: "The aspartame purchased hereunder may be freely resold by NSC with no geographic restrictions."

Please be advised that the counter-proposal in this letter is being provided for settlement purposes only and is not to be construed as an admission to any breach, infringement or other wrongdoing by The NutraSweet Company, or an admission to the validity of any claims of Ajinomoto Co., Inc. Also, the terms and conditions are subject to final approval by J.W. Childs Associates, L.P.

Please forward to the appropriate Ajico personnel. We look forward to Ajico's response

Very truly yours,

Jeffrey M. Hoster

cc: Mr. Nick Rosa
    Mr. Craig Petray
    David T. Bowman, Esq